777 A.2d 442

**Frederic WEINBERG, Sheilah Guarino and Marc R. Gordon, individually and on behalf of all others similarly situated, Appellees,**

**v.**

**SUN COMPANY, INC. and Sun Company, Inc (R & M), Appellants.**

Supreme Court of Pennsylvania.

Argued Jan. 30, 2001.

Decided July 26, 2001.

Nicole Dominique Galli, Jon A. Baughman, Philadelphia, for Sun Company Inc., and Sun Company, Inc. (R&M).

Debora Ann O'Neill, Ann D. White, Jenkingtown, Michael J. Kane, Camp Hill, for Frederic Weinberg and Sheilah Guarino.

Stephen James Harburg, amicus curiae, for Product Liability Advisory Council, Inc.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO and SAYLOR, JJ.

## OPINION OF THE COURT

FLAHERTY, Chief Justice.

Appellants in this consumer class action argue that Superior Court misconstrued the Pennsylvania Unfair Trade Practices and Consumer Protection Law (UTPCPL), 73 P.S. § 201–1 et seq., and erroneously interpreted and applied the standards

for class certification. The trial court denied class certification in a multi-count action brought under the UTPCPL and the common law. Superior Court affirmed in part and reversed in part, holding that the trial court erred in denying class certification as to some of the counts in the complaint.

Appellees Weinberg, Guarino, and Gordon, who were purchasers of Sunoco Ultra® gasoline, filed this consumer class action in the Philadelphia County Court of Common Pleas, challenging Sunoco advertising of Ultra®. ″ They alleged that Sunoco's advertisements induced consumers to purchase Ultra® when their vehicles did not need the high level of octane the gasoline contained. Their complaint requested money damages on their behalf and on behalf of a nationwide class of similarly situated persons, asserting violations of the UTPCPL, the consumer fraud laws of all other states, and the common law. The common law claims alleged fraud, negligent misrepresentation, breach of express warranty, and unjust enrichment.

The trial court held hearings on class certification, receiving evidence as to the existence or absence of common issues of fact and other class certification issues. The court denied class certification, holding that the requirements of numerosity and common questions were not met and that individual questions of fact predominated. The basis of the decision was the court's interpretation that the UTPCPL section permitting a private right of action, 73 P.S. § 201–9.2, requires individual proof of ascertainable loss as a result of any conduct prohibited by the law. The court rejected the proof offered through the testimony of appellees' expert witness, Dr. Latham, who expounded the theory that appellants' false marketing campaign increased the demand for Ultra® gasoline, raising the purchase price for all consumers. The trial court viewed each of the counts of the complaint as sounding in fraud. Under the common law, fraud-based claims require proof of reliance and causation. The court therefore defined the universe of plaintiffs to include only consumers who believed the false message that Ultra® would enhance engine performance and purchased Ultra® for that reason. The court accepted the

approach of appellants' expert, Dr. Wind, which would exclude consumers who did not claim to have been deceived by appellants' advertising but purchased the product for other reasons such as brand loyalty, convenience, perception of quality, or as a reflection of social status. Following this approach, the trial court held that the requirement of numerosity was not established, that individual issues predominated, and that the case was not appropriate for disposition as a class action.

Superior Court reversed as to two of the four UTPCPL claims. The court analyzed the nature of the claims and concluded that count five, alleging deceptive marketing of goods and count nine, alleging bait advertising, were essentially claims of false advertising and were not in the nature of common law fraud. Superior Court stated that the trial court's failure to differentiate between fraud and false advertising led to its error in holding that the plaintiffs must show individual reliance and causation. In this analysis, Superior Court followed its precedent of *DiLucido v. Terminix Int'l, Inc.*, 450 Pa.Super. 393, 676 A.2d 1237 (1996). *DiLucido* distinguished between fraud-based claims and other claims which are specific forms of deceptive advertising cognizable under the UTPCPL, and held that the elements of proof differ in that false advertising claims do not require proof of reliance and causation as fraud-based claims do.

The court held that claims of false advertising under the UTPCPL required that private plaintiffs and class members prove two things: first, the elements of the unfair trade practice at issue for false advertising, that the advertisement was a false representation of fact, that it had a tendency to deceive a substantial segment of the advertising audience, and that it was likely to make a difference in a purchasing decision—and second, that the false advertising caused an ascertainable loss.

This interpretation of the private right of action under the UTPCPL is the central question in this appeal. Appellants argue that the foregoing standard is the one applicable to enforcement actions brought in the public interest by the

attorney general or a district attorney in the name of the Commonwealth, not the proper standard for private actions. The essence of the argument is that, while the attorney general may bring an action to restrain advertising which might "have a tendency to deceive a substantial segment" of the public and which is "likely to" influence purchasing decisions, private plaintiffs have no standing to bring actions in the public interest but must prove that they themselves were actually deceived and that the advertising actually influenced their purchasing decisions.

Appellees, on the other hand, argue that Superior Court was correct in reversing the trial court's denial of class certification. They believe that individual plaintiffs need not prove reliance on the false or misleading advertising. They offered proof that the advertising increased the sales of the product, the increased sales drove the price up, and every purchaser of Ultra® gasoline was therefore injured by the false advertising because he paid more for the gasoline than he would have paid otherwise. A causal connection was thus established between the false advertising and an "ascertainable loss," whether or not the individual plaintiff himself was misled by the advertising, whether the advertising influenced his purchasing decision, or whether he otherwise relied on the advertising.

The UTPCPL section applicable to the attorney general states:

### § 201–4. Restraining prohibited acts

Whenever *the Attorney General or a District Attorney* has reason to believe that any person is using or is about to use any method, act or practice declared by section 3 of this act [73 P.S. § 201–3] to be unlawful, and that proceedings would be *in the public interest,* he may bring an action *in the name of the Commonwealth* against such person to restrain by temporary or permanent injunction the use of such method, act or practice.

73 P.S. § 201–4 (emphasis added).

Private actions are governed by 73 P.S. § 201–9.2:

(a) Any person who purchases or leases goods or services *primarily for personal, family or household purposes* and thereby suffers any ascertainable loss of money or property, real or personal, *as a result of the use or employment by any person of a method, act or practice declared unlawful* by section 3 of this act [73 P.S. § 201–3], may bring a private action, to recover actual damages or one hundred dollars ($100), whichever is greater. The court may, in its discretion, award up to three times the actual damages sustained, but not less than one hundred dollars ($100), and may provide such additional relief as it deems necessary or proper.

(b) Any permanent injunction, judgment or order of the court made under section 4 of this act [73 P.S. § 201–4, pertaining to actions brought by the attorney general or a district attorney] shall be prima facie evidence in an action brought under [this section] that the defendant used or employed acts or practices declared unlawful by section 3 of this act [73 P.S. § 201–3].

(Emphasis added.)

It readily appears that Commonwealth actions and private actions are distinguishable.

In reversing the trial court's denial of class certification as to the claims of false advertising, Superior Court relied on *DiLucido v. Terminix Int'l, Inc., supra.* The opinion states: "a plaintiff must establish that a defendant's advertisement is false, that it actually deceives or has a tendency to deceive a substantial segment of its audience, and that the false advertising is likely to make a difference in the purchasing decision," citing *Commonwealth v. Hush–Tone Industries, Inc.,* 4 Pa.Cmwlth. 1 (1971). *Hush–Tone,* however, was an action brought by the Attorney General in the name of the Commonwealth, and the quoted elements of proof are the sorts of considerations appropriate for a high public official responsible for protecting public interests.

■ There is no authority which would permit a private plaintiff to pursue an advertiser because an advertisement

might deceive members of the audience and might influence a purchasing decision when the plaintiff himself was neither deceived nor influenced. There is certainly nothing in the statute which suggests such a private right. The UTPCPL was enacted in 1968, and a private cause of action was added in 1976. The UTPCPL's "underlying foundation is fraud prevention." *Commonwealth v. Monumental Properties, Inc.*, 459 Pa. 450, 329 A.2d 812, 816 (1974). Nothing in the legislative history suggests that the legislature ever intended statutory language directed against consumer fraud to do away with the traditional common law elements of reliance and causation.[1]

■ The statute clearly requires, in a private action, that a plaintiff suffer an ascertainable loss *as a result of* the defendant's prohibited action. That means, in this case, a plaintiff must allege reliance, that he purchased Ultra® because he heard and believed Sunoco's false advertising that Ultra® would enhance engine performance. In addition, the statute requires him to allege that he purchased the gasoline for personal or household purposes as opposed to business purposes, that he drove a vehicle whose engine would not benefit from the high octane of Ultra®, as well as the amount he purchased in order to establish the amount of his ascertainable loss. The questions of fact applicable to each individual private plaintiff would thus be numerous and extensive. It cannot be said that the trial court erred in concluding that individual questions of fact would predominate over common issues of fact and law and concluding that the certification requirements of commonality and numerosity were not met. We must therefore reverse the portion of Superior Court's order mandating class certification for counts five and nine of the complaint.

Order affirmed in part and reversed in part.

Justice NEWMAN did not participate in the consideration or decision of this case.

1. *See Legislative Journal: House of Representatives*, 1975 Sess. vol. 1, no. 63, at 2149–60, 2180–82 (July 16, 1975) (remarks upon final House passage); *Legislative Journal: Senate*, 1976 Sess. vol. 1, no. 114, at 1197–98 (June 28, 1976) (remarks upon final Senate passage).