**Patricia SEXTON, Individually and on Behalf of All Other Persons and Entities Similarly Situated, Appellant,**

v.

**PNC BANK, Appellee.**

Superior Court of Pennsylvania.

Argued Oct. 24, 2001.

Filed Feb. 13, 2002.

Ronald Smolow, Trevose, for appellant.

Darryl J. May, Philadelphia, for appellee.

Before JOHNSON, TODD, and KELLY, JJ.

JOHNSON, J.

¶ 1 In this appeal, we address whether charges imposed by defendant PNC Bank (PNC) for cashing checks drawn on PNC violate the bank's duty under 13 Pa.C.S. §§ 3409 and 3413, to pay drafts according to their terms at the time they are accepted. We conclude that such charges do not violate the bank's duty under these sections. We consider also whether the bank's practice in charging such fees, as alleged in the plaintiff's complaint, violates provisions of Pennsylvania's Unfair Trade Practices and Consumer Protection Law. *See* 73 Pa.C.S. §§ 201–1—201–9.3. Again, we conclude that it does not.

¶ 2 Patricia Sexton appeals the trial court's order granting preliminary objections in the nature of a demurrer and dismissing her claims against PNC Bank. In her complaint, Sexton alleged that she appeared at a PNC Bank branch office and presented her payroll check for payment. After Sexton, who was not a PNC depositor, presented her check the bank cashed it but withheld a check-cashing fee of $3.00. PNC did not withhold such a fee when cashing checks for customers who were PNC depositors. Accordingly, Sex-

ton pled her allegations in a class action complaint, defining the class of persons represented as "[a]ll payees of checks drawn on PNC Bank who did not have an account with PNC Bank and who, since October 1, 1999, presented the check to PNC Bank for payment."

¶ 3 Sexton framed her complaint in five counts, designated "Breach of Duty of Payor Bank," (Count One); "Breach of Contract," (Count Two); "Unjust Enrichment—Failure of Consideration," (Count Three); "Tortious Interference with Contract," (Count Four); and "Violation of Consumer Protection Laws," (Count Five). Subsequently, the parties stipulated to a dismissal without prejudice of counts two through four, leaving only Sexton's breach of duty and consumer protection claims. In support of her breach of duty claim (Count One), Sexton alleged that PNC's payment of the check subject to a $3.00 deduction constituted a variance of the terms of "acceptance" within the meaning of Uniform Commercial Code and as such was unlawful. PNC responded with a demurrer, contending, *inter alia,* that Sexton's act of presenting a check for payment did not occasion, require, or result in PNC's "acceptance" as that term is defined under relevant law. Following oral argument, the trial court, the Honorable Steven E. Levin, concluded that Sexton's complaint failed to state a cause of action but did not address the specific arguments the parties had advanced. Sexton filed this appeal.

¶ 4 Sexton presents the following question for our review:

> Did PNC Bank violate and breach its duties under the common law of negotiable instruments, the Uniform Commercial Code or the Pennsylvania Unfair Trade Practices and Consumer Protection Law when it first accepted for the face amount a check drawn on PNC and

payable to a non-account holder and then deducted a fee for paying that check?

Brief for Appellant at 3. Sexton's statement of the foregoing question addresses putative causes of action under different and unrelated statutes. Accordingly, we will address Sexton's supporting arguments separately.

■■■ ¶ 5 Sexton's appeal arises from entry of an order granting preliminary objections in the nature of a demurrer. To resolve Sexton's questions on appeal, we must discern whether the trial court erred in entering that order. Preliminary objections in the nature of demurrer test the legal sufficiency of the plaintiff's complaint. *See Tucker v. Philadelphia Daily News,* 757 A.2d 938, 942 (Pa.Super.2000). Accordingly, to dispose of a demurrer, the court must examine the complaint to determine whether it sets forth a cause of action that, if proven, would vest the plaintiff with a right to relief. *See id.; Bourke v. Kazaras,* 746 A.2d 642, 643 (Pa.Super.2000). The court must accept as true the complaint's well-pled factual allegations, but need not consider conclusions of law, opinions, or argumentative allegations. *See Wiernik v. PHH Mortg. Corp.,* 736 A.2d 616, 619 (Pa.Super.1999). The court may sustain the demurrer only where application of the law to the allegations pled demonstrates with certainty that the complaint fails to state a cause of action. *See McKeeman v. Corestates Bank, N.A.,* 751 A.2d 655, 659 (Pa.Super.2000). Any doubt must be resolved in favor of the plaintiff. *See Wiernik,* 736 A.2d at 619. Our scope of review is plenary and we apply the same standard of review as the trial court. *See Bourke,* 746 A.2d at 643.

■■■ ¶ 6 Concerning first Sexton's claims under the Uniform Commercial Code, Sexton alleged, in pertinent part, that:

Plaintiff was the payee on a check drawn on PNC Bank, did not have an account with PNC Bank, was a holder in due course, presented the check for payment at PNC Bank, *PNC Bank accepted the check without varying the terms thereof,* and PNC Bank paid plaintiff the amount of the check less a fee of $3.00.

Class Action Complaint, 12/28/99, at 5 ¶ 13 (Reproduced Record (R.R.) at 8a) (emphasis added). In support of this averment, Sexton argues that PNC inscribed the check on front and rear with its business "signature," attesting its acceptance of the check within the meaning of 13 Pa.C.S. § 3409. Brief for Appellant at 14. Sexton argues further that when PNC deducted a check-cashing "fee" before paying her the proceeds of the check, it violated its lawful obligation as an acceptor, pursuant to 13 Pa.C.S. § 3413, to pay the check "according to its terms at the time it was accepted." Brief for Appellant at 11. PNC argues in response that Sexton misapprehends the meaning of acceptance and that her request to cash the check was, in fact, a "presentment for payment" as defined by 13 Pa.C.S. § 3501(a)(1). Brief for Appellee at 22. The bank argues accordingly that its act in cashing the check did not constitute acceptance and that, consequently, it did not assume the obligations of an acceptor upon which Sexton relies to state her claim. Brief for Appellee at 16–18. Upon review of the disputed provisions of our commercial code, we conclude that PNC's interpretation of these sections is correct.

■ ¶ 7 Section 3409, from which Sexton would derive her cause of action, defines "acceptance" as an endorsement by the drawee bank, promising to pay the instrument as drawn. This definition varies markedly from the meaning of "acceptance" in ordinary parlance. Much narrower in scope, acceptance as defined for commercial paper transactions is not established by mere presentation of a check to a teller for conversion to cash. Rather, acceptance contemplates a *specific guarantee by the bank* of payment upon presentation in the future. Section 3409 prescribes the form and content of acceptance as follows:

§ 3409. **Acceptance of draft; certified check**

(a) **Definition of "acceptance".**—"Acceptance" means *the drawee's signed agreement to pay a draft as presented.* It must be written on the draft and may consist of the drawee's signature alone. Acceptance may be made at any time and becomes effective when notification pursuant to instructions is given or the accepted draft is delivered for the purpose of giving rights on the acceptance to any person.

13 Pa.C.S. § 3409(a) (emphasis added). This definition finds common application in a drawee bank's issuance of a certified check. *See* 13 Pa.C.S. § 3409(d) (defining "[c]ertified check" as "a check accepted by the bank on which it is drawn").

¶ 8 If a bank "accepts" a check as defined by section 3409, it assumes certain obligations to a subsequent holder as defined, in pertinent part, by section 3413:

§ 3413. **Obligation of acceptor**

(a) **General rule.**—The acceptor of a draft is obliged to pay the draft:

(1) according to its terms at the time it was accepted, even though the acceptance states that the draft is payable "as originally drawn" or equivalent terms;

\* \* \*

The obligation is owed to a person entitled to enforce the draft or to the draw-

er or an indorser who paid the draft under section 3414 (relating to obligation of drawer) or 3415 (relating to obligation of indorser).

13 Pa.C.S. § 3413.

■■■ ¶ 9 These two sections, read together, imply a significant distinction between the concepts of acceptance and subsequent payment; a drawee who "accepts" an instrument guarantees its stated value in anticipation that it will be presented later for "payment" of that stated value. *See* Frederick M. Hart & William F. Willier, *Negotiable Instruments Under the Uniform Commercial Code*, vol. 2, § 9.01[3][d] ("When the drawee accepts upon the presentment for acceptance the presentment does not meet the requirement of a presentment for payment and a later presentment for payment is necessary."). This distinction between payment and acceptance is recognized expressly by courts, commentators, and other provisions of the Code itself. *See* 13 Pa.C.S. § 3501(a) (defining "presentment" as a demand "to pay the instrument made to the drawee or a party obliged to pay the instrument ... *or* ... to accept a draft made to the drawee") (emphasis added). *See also* Thomas M. Quinn, *Quinn's Uniform Commercial Code Commentary and Law Digest*, 2d ed., § 3–501[A][3] (commenting that one who presents an instrument for acceptance "is now not requesting money", but a "signature" that establishes "a definite commitment to pay, ... but is something short of the actual money"). As explained by the United States Court of Appeals for the Eighth Circuit:

'The acceptance of a check contemplates a promise on the part of the drawee to pay the same, and is essentially different from the payment thereof. Payment is the natural and legitimate end of a check, whereas an acceptance adds to its original vitality a new element of force and strength calculated to prolong its existence and widen its sphere of usefulness. When there is an acceptance, a contractual relationship arises between the holder and the drawee and consequently there is a promise to perform; when there is a payment, there is an actual performance. It has, accordingly, been ruled that payment of a check is not acceptance' ....

*Schooler v. United States*, 231 F.2d 560, 562 (8th Cir.1956). *See also* 13 Pa.C.S. § 3409(d) (recognizing issuance of certified check as form of "acceptance"). Thus, acceptance, as a promise to pay, and payment itself are discreet events. Contrary to Sexton's argument, the two do not coincide and payment is not acceptance. *See Schooler*, 231 F.2d at 562. Only if PNC had first "accepted" a check, i.e. guaranteed its value, and later refused to pay its value as stated on the face of the document could the violation of duty she asserts provide a cause of action.

¶ 10 Upon review of Sexton's complaint, we note the plaintiff's repeated assertions that she presented her check for payment and that PNC "accepted" the check. Class Action Complaint, 12/28/99, at ¶¶ 7, 8, 13, 17. We conclude that Sexton's allegations of acceptance assert conclusions of law and, for purposes of PNC's demurrer, may not be accepted as true. *See Wiernik v. PHH Mortg. Corp.*, 736 A.2d at 619. Significantly, Sexton's well-pled allegations *of fact*, when adjudged in accordance of the foregoing law of negotiable instruments, fall markedly short of stating a cause of action. Indeed, Sexton's principal allegation, stripped of legal conclusions, establishes only that she appeared at a PNC office and cashed an ordinary check for which the bank charged a service fee. Class Action Complaint, 12/28/99, at 5 ¶ 13 (asserting that Sexton "presented [her] check for payment at PNC Bank, PNC

Bank accepted the check without varying the terms thereof, and PNC Bank paid the plaintiff the amount of the check less a fee of $3.00"). On the basis of this allegation, acceptance pursuant to 13 Pa.C.S. § 3409(a) cannot be said to occur. Nowhere in the complaint has Sexton alleged that she sought PNC's certification of her payroll check, *see* 13 Pa.C.S. § 3409(d), or to obtain the bank's guarantee as drawee to pay the stated value subsequently when she or another holder might present the instrument for payment, *see* 13 Pa.C.S. § 3409(a). *See also* Hart & Willier, *supra* at § 9.01[3][d]. Nor has Sexton alleged that PNC withheld value from the payment of a check it had previously accepted, e.g. declined to pay the stated value of a certified check. Consequently, her complaint fails to state facts upon which "acceptance" might be established. In the absence of acceptance by the bank, the obligations of an acceptor cannot, as a matter of law, be imposed upon the bank. Accordingly, we are compelled to conclude that Sexton's claim fails to state a cause of action. PNC did not owe Sexton the duty she claims; thus, the trial court did not err in granting PNC's demurrer on the plaintiff's count one, "Breach of Duty of Bank."

■ ¶ 11 In the remaining count of her complaint, Sexton asserted that PNC's conduct in collecting the fee at issue constitutes a violation of Pennsylvania's Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201–1—201–9.3 (UTPCPL). The complaint premises Sexton's assertion on preceeding allegations of her complaint including, *inter alia,* the contention that the Bank breached its duty under the Uniform Commercial Code. Class Action Complaint, 12/28/99, at 8 ¶ 31. Sexton argues on appeal that "[w]hen PNC collected a fee that was not authorized and for a 'service' that was not needed, it misrepresented the nature, character

and need for the 'services' it was rendering, in violation of 73 P.S. § 201–2(4)(v), (vii) and (xv)." Brief for Appellant at 22. Sexton argues that this same conduct violates the UTPCPL's catch-all provision, 73 P.S. § 201–2(4)(xxi). *Id.*

¶ 12 We conclude, initially, that to the extent Sexton's UTPCPL claim relies on PNC's alleged breach of duties imposed by virtue of its "acceptance" of her check, her claim fails to state a basis for relief. As we have determined that no acceptance occurred such as to impose on the bank the duties of an acceptor, we are compelled to find the related allegations an insufficient basis for a UTPCPL claim. A contrary conclusion risks imposition of a duty under the UTPCPL inconsistent with the existing law of negotiable instruments.

■ ¶ 13 We are constrained as well, notwithstanding the deficiency of Sexton's commercial paper claim, to conclude that her claim is deficient on the grounds of the UTPCPL itself. Our Supreme Court has held expressly that successful prosecution of a private cause of action under the UTPCPL is dependent upon pleading and proof by the plaintiff that he or she suffered an ascertainable loss "as a result" of the defendant's prohibited conduct. *See Weinberg v. Sun Company, Inc.,* 565 Pa. 612, 777 A.2d 442, 446 (2001). The Court has interpreted this language to mean that a plaintiff must establish his specific reliance on some conduct or representation by the defendant that caused him to incur the loss in question. *See id. See also Basile v. H & R Block,* 729 A.2d 574, 584 (Pa.Super.1999), *vacated on other grounds,* 563 Pa. 359, 761 A.2d 1115 (2000) (concluding that "the UTPCPL requires a showing of detrimental reliance in private actions based on all provisions of the statute").

¶ 14 In this case, Sexton has failed to plead the requisite causal relationship. While we can discern readily from Sexton's

allegations that she and the members of the plaintiff class suffered an ascertainable loss of at least $3.00, the complaint fails to raise specific allegations that the loss was caused by Sexton's reliance on conduct or representations of PNC or its employees. Indeed, Sexton's allegations rest primarily on her assertion of the duty of acceptors under the Uniform Commercial Code and arise from the fact that PNC charged the fee at all. Class Action Complaint, 12/28/99, at ¶¶ 7, 12, 13, 17. Sexton fails to allege that she incurred the fee in reliance upon any representation by a bank employee, or that the bank did not disclose the fee. Moreover, Sexton's allegations under count five, in support of her UTPCPL claim, state only conclusions of law resting on her UCC claim. *Id.* at ¶¶ 33, 34. Accordingly, Sexton's complaint fails to state a claim under the UTPCPL, as a consequence of which the trial court did not err in granting PNC's demurrer to count five.

¶ 15 For the foregoing reasons, we affirm the order of the trial court granting PNC's preliminary objections in the nature of a demurrer.

¶ 16 Order **AFFIRMED.**