Mark B. ARONSON, on Behalf of Himself and All Others Similarly Situated,

v.

GREENMOUNTAIN.COM Formerly Green Mountain Energy Resources D/B/A Green Mountain Energy, a Corporation.

Appeal of Mark B. Aronson.

Superior Court of Pennsylvania.

Argued Sept. 18, 2002.
Filed Oct. 11, 2002.

---

Joseph N. Kravec, Jr., Pittsburgh, for appellant.

Curt Vazquez, Pittsburgh, for appellee.

Before: LALLY–GREEN, BENDER, and GRACI, JJ.

OPINION BY BENDER, J.

¶ 1 Mark B. Aronson (Appellant) appeals from the order denying his motion for certification of a class of plaintiffs consisting of customers of the Defendant Green-Mountain.com (GreenMountain), formerly Green Mountain Energy, in an action against GreenMountain for false advertising under the Unfair Trade Practices and Consumer Protection Law (UTPCPL), 73 P.S. §§ 201–1—210–6. Appellant claims that the trial court erred in finding that Appellant had failed to show commonality based on its conclusion that individual issues of fact would predominate over common questions of fact and law. For the reasons that follow, we affirm.

¶ 2 The trial court summarized the facts of this case as follows:

Plaintiff, Mark B. Aronson, filed a Complaint in civil action as a class action seeking damages against Defendant,

GreenMountain.com formerly Green Mountain Energy Resources d/b/a Green Mountain Energy, a Corporation (GreenMountain). [GreenMountain] is a licensed supplier of electric generation services under the Electricity Generation Customer Choice and Competition Act, 66 Pa.C.S. [§ ] 2801 *et seq.* Plaintiff alleges that GreenMountain violated the Pennsylvania Unfair Trade Practices and Consumer Protection Law (UTPCPL) for disseminating false advertisements to Pennsylvania consumers.

After the pleadings were closed, Plaintiff filed a Motion for Class Certification and a hearing on the Motion was held on March 13, 2001 in accordance with Pa.R.C.P. 1707(c).

Plaintiff's Complaint alleges that GreenMountain disseminated false advertisements about the total cost of its electricity in violation of Section 201–2(4)(ix) of the UTPCPL which prohibits "advertising goods or services with intent not to sell them as advertised." Plaintiff's Complaint specifically avers that GreenMountain's advertisements falsely portrayed the total cost of its electricity to be less than it actually was and Plaintiff seeks to recover damages for losses sustained as a result of this alleged false advertising.

Plaintiff seeks certification of a class of GreenMountain customers defined as:

All persons who began or continued purchasing electrical power at a residential rate from GreenMountain between June 1, 1998, the date when GreenMountain first publicly disseminated false and misleading pricing comparison advertisements that excluded the gross receipts tax from GreenMountain's price and included it for electric distribution companies, through September 24, 1999, the date when the Attorney General publicly announced the Assurance of Voluntary Compliance which revealed GreenMountain's false pricing comparisons. Excluded from the class are GreenMountain's officers, directors, employees, agents, predecessors, successors, subsidiaries and affiliates.

(Plaintiff's Amended Motion for Class Certification, p. 1)

. . .

Plaintiff's false advertising claim arises from GreenMountain's advertisements which included price comparisons between the total bill costs for GreenMountain's three electricity products and the total bill costs for electricity of its competitors. In these advertisements, the prices quoted for GreenMountain's electricity did not include the Pennsylvania gross receipts tax while the price of its competitors did include the gross receipts tax.

GreenMountain admits that its price comparisons which it began distributing in September, 1998, were inaccurate (Perkins Depo., pp. 44–45, 48–50, 56–64; Hill Depo., pp. 38–40; Zamore Depo., pp. 88–89). The Pennsylvania Attorney General began an investigation of certain electric distribution companies, including GreenMountain, in March, 1999 (Zamore Aff. paragraph 2, Defendant's Exhibit S). On September 24, 1999, at the conclusion of the investigation, GreenMountain entered into an Assurance of Voluntary Compliance, a public settlement agreement, which did not contain any admission of liability by GreenMountain. GreenMountain agreed to include certain specified information in future advertisements and to send an explanatory note to customers under the Assurance of Voluntary Compliance. GreenMountain further agreed

to pay $100,000.00 for the costs of the investigation and for future public protection purposes, including but not limited to, educational purposes regarding energy deregulation. (Assurance of Voluntary Compliance, Defendant's Exhibit D).

Trial Court Opinion (T.C.O.), 7/30/01, at 1–4. The trial court initially certified the class in reliance upon our decision in *Weinberg v. Sun Co., Inc.,* 740 A.2d 1152 (Pa.Super.1999), *reversed in part,* 565 Pa. 612, 777 A.2d 442 (2001). In *Weinberg,* we held that a claim for false advertising under section 210–2(4)(ix) of the UTPCPL does not require a showing of a plaintiff's reliance upon the advertisement or actual belief in the advertisement's claims. *Id.* at 1167.

¶ 3 On appeal, the Pennsylvania Supreme Court reversed our decision in *Weinberg. Weinberg v. Sun Co., Inc.,* 565 Pa. 612, 777 A.2d 442 (2001). The court held that a claim for false advertising under section 210–2(4)(ix) of the UTPCPL requires a plaintiff to allege reliance on the advertisement. *Id.* at 446. *Weinberg,* like the case before us, was one where the trial court denied class certification on the basis that the plaintiffs had failed to show commonality because individual questions of fact, which were whether each class member relied on the advertisement, would predominate over common questions of fact and law. The Supreme Court found that the trial court did not err in refusing to certify the class on this basis. *Id.*

¶ 4 The Supreme Court handed down its decision in *Weinberg* on July 26, 2001. On August 2, 2001, GreenMountain filed a motion for reconsideration in which it relied on the precedent established by the Supreme Court in *Weinberg.* The trial court granted GreenMountain's motion for reconsideration, and on October 26, 2001, the court entered an order denying class certi-

fication and vacating its previous order that had certified the class. Appellant then filed this appeal raising two questions for our review:

1. Whether the elements of reliance and causation in a UTPCPL claim can ever be established on a class-wide basis by employing a rebuttable evidentiary inference or presumption[?]

2. Whether, if the answer to question 1 is in the affirmative, the record here is sufficient to allow for the application of such an inference or presumption[?]

Brief for Appellant at 4.

■ ¶ 5 "A lower court's decision concerning class certification is a mixed finding of law and fact entitled to appropriate deference upon appeal." *Janicik v. Prudential Ins. Co. of Am.,* 305 Pa.Super. 120, 451 A.2d 451, 454 (1982) (quotation marks omitted). Pursuant to Pa.R.C.P. 1702, there are five prerequisites to a class action:

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class;

(4) the representative parties will fairly and adequately assert and protect the interests of the class under the criteria set forth in Rule 1709; and

(5) a class action provides a fair and efficient method for adjudication of the controversy under the criteria set forth in Rule 1708.

Pa.R.C.P. 1702.

■ ¶ 6 In determining whether a class of plaintiffs has met the foregoing requirements in seeking certification where monetary recovery alone is sought,

the rules further direct the court to determine "whether common questions of law or fact predominate over any question affecting only individual members." Pa.R.C.P. 1708(a)(1). "Trial courts are vested with broad discretion in determining definition of the class as based on commonality of issues and the propriety of maintaining the action on behalf of the class." *Klemow v. Time Inc.*, 466 Pa. 189, 352 A.2d 12, 16 (1976). "Consequently, a lower court's order concerning class certification will not be disturbed on appeal unless the court failed to consider the requirements of the rules or abused its discretion in applying them." *Janicik*, 451 A.2d at 454.

¶ 7 In the instant case, the trial court denied class certification on the same basis that the trial court in *Weinberg* had denied certification, i.e., because individual questions of fact as to whether each individual viewed the advertisement and relied upon the advertisement would predominate over common issues of fact and law. T.C.O., 10/26/01, at 3–5. Appellant argues that this was an erroneous conclusion as the class was entitled to employ "an evidentiary presumption" to "establish the reliance and causation elements" of the false advertising claim under the UTPCPL. Brief for Appellant at 15. The implication of Appellant's argument is that if it were entitled to such a presumption, then it would obviate the burden of establishing each class member's reliance on the advertisement, and hence this question of fact would not predominate over common issues of fact and law.

¶ 8 Initially, we note that Appellant cites two lines of cases in support of this argument, both of which we find readily distinguishable. First, Appellant cites *Varacallo v. Massachusetts Mut. Life Ins. Co.*, 332 N.J.Super. 31, 752 A.2d 807 (2000), and *Cope v. Metropolitan Life Ins. Co.*, 82 Ohio St.3d 426, 696 N.E.2d 1001 (1998). In

*Varacallo*, the plaintiffs brought a class action suit against the insurer, from whom they had purchased life insurance, claiming that they "were presented with written illustrations prepared by Mass Mutual that omitted material information." *Varacallo*, 752 A.2d at 812. The court focussed its analysis on the insurer's documents and stated:

**Thus, no member of the class will claim that the agents told them more than what was represented in the literature.** It may well be, as Mass Mutual contends, that sales presentations differed from agent to agent depending on their individual skills, and from client to client depending on their needs and ability to comprehend. **But we find no evidence in the record that these agents made sales pitches that went beyond the literature produced by Mass Mutual,** or that any of them knew Mass Mutual could not support the projected dividends and intended to ratchet them down as a certainty, but failed to tell prospective policyholders. Even if some or many of the policyholders relied upon the agents' sales pitch, we have held that the reliance element in a common law fraud claim may be satisfied by proof of indirect reliance where a party deliberately makes "false representations ... with the intent that they be communicated to others for the purpose of inducing the others to rely upon them."

*Id.* at 816 (emphasis added) (quoting *Metric Investment Inc. v. Patterson*, 101 N.J.Super. 301, 244 A.2d 311 (1968)). Thus, the court did not presume reliance, but instead permitted the plaintiffs to establish reliance indirectly through the insurer's literature, which the plaintiffs allegedly viewed before purchasing the insurance policies. The facts in *Varacallo*, therefore, are distinguishable from the facts of the case before us be-

cause here there is no allegation that the class members ever viewed the advertisements.

¶ 9 Similarly, in *Cope*, the plaintiffs brought a class action against an insurer claiming that "MetLife agents targeted existing MetLife policyholders, sold them replacement insurance as new insurance, and intentionally omitted the mandated disclosure warnings in violation of statutory and regulatory provisions and MetLife's own policies and procedures." *Cope*, 696 N.E.2d at 1006. In *Cope*, the court focussed its analysis on the fact that the insurer's liability arose from its failure to include statutorily mandated disclosures when it sold replacement insurance:

> [O]ther courts considering the reliance issue have decided the certification question based on whether the alleged misrepresentations were varied or oral as opposed to uniform or written. **Under this view, appellants' claims present the classic case for treatment as a class action because they are based on written documents that uniformly indicate the omission of standard disclosure warnings.**
>
> . . .
>
> [C]lass action treatment is appropriate where claims arise from standardized forms or routinized procedures, notwithstanding the need to prove reliance.
>
> Moreover, the situation here is markedly different from that in *Schmidt* [*v. Avco Corp.*, 15 Ohio St.3d 310, 473 N.E.2d 822 (1984)]. Unlike in *Schmidt* **proof of reliance will not require separate examination of each prospective class member.** Instead, proof of reliance in this case may be sufficiently established by inference or presumption.

*Cope*, 696 N.E.2d at 1007–08 (emphasis added). The court's conclusion that the class should be permitted to establish reliance either by inference or presumption was based on the fact that the insurer's alleged liability to the class was founded upon documents that were uniform and were within each plaintiff's insurance records:

> With regard to each appellant, the record contains a "Sales Representative's Report," which indicates that the transaction is not a replacement and that no replacement forms were completed. These reports, which are part of each contract and extant in MetLife's own records, provide objective written verification that the required disclosures were not made. These standard documents could be used to establish MetLife's failure to distribute the mandated disclosure warnings, thereby obviating the need for testimony as to what each class member was told or not told by agents with whom they dealt.

*Id.* at 1006. In the instant case, there are no documents that could give rise to such an inference or presumption. Appellant does not allege that the class members viewed any one particular advertisement, or any of the various advertisements for that matter. Thus, although Appellant's argument claims entitlement to a presumption of reliance upon the advertisements, it does not address the more fundamental issue of why the class should be entitled to such a presumption when the class members never even viewed the advertisements.

¶ 10 The second line of cases cited by Appellant all involve material misrepresentations by defendants that were in privity of contract with the plaintiffs. *See In re Estate of Harris*, 431 Pa. 293, 245 A.2d 647 (1968); *DeJoseph v. Zambelli*, 392 Pa. 24, 139 A.2d 644 (1958); *LaCourse v. Kiesel*, 366 Pa. 385, 77 A.2d 877 (1951); *New York Life Ins. Co. v. Brandwene*, 316 Pa. 218, 172 A. 669 (1934). First, we note that

none of these cases were class actions. Second, and most important, each case involves an allegation of a material misrepresentation made to the plaintiff by the defendant. As stated above, in the instant case there is no allegation that the class members were ever aware of the misrepresentations in the advertisements. Consequently, these cases lend no support to Appellant's argument.

¶ 11 The most formidable obstacle that Appellant has failed to overcome in this appeal is the precedent recently established by our Supreme Court in *Weinberg*. In *Weinberg*, the plaintiffs brought a false advertising claim under the UTPCPL, alleging that "Sunoco's advertisements induced consumers to purchase Ultra® when their vehicles did not need the high level of octane the gasoline contained." *Weinberg*, 777 A.2d at 443–44. Sunoco argued that each plaintiff must prove that he or she was deceived by a Sunoco advertisement and that the advertisement influenced his or her purchasing decision. The court accepted this argument and stated:

> The statute clearly requires, in a private action, that a plaintiff suffer an ascertainable loss *as a result of* the defendant's prohibited action. That means, in this case, **a plaintiff must allege reliance, that he purchased Ultra® because he heard and believed Sunoco's false advertising that Ultra® would enhance engine performance**.... The questions of fact applicable to each individual private plaintiff would thus be numerous and extensive. It cannot be said that the trial court erred in concluding that individual questions of fact would predominate over common issues of fact and law and concluding that the

certification requirements of commonality and numerosity were not met.

*Id.* at 446 (emphasis added).

■ ¶ 12 We are compelled to a similar conclusion in this case. Each plaintiff must allege reliance, and here that means that each plaintiff purchased GreenMountain energy because he or she viewed and believed GreenMountain's false advertisements. We conclude that the trial court did not err in finding that such a question of fact would predominate over common questions of law and fact.

■ ¶ 13 We also conclude that the trial court did not err in refusing Appellant's request for an evidentiary presumption of reliance.[1] Such a presumption would allow a plaintiff to pursue GreenMountain for false advertisements that the plaintiff never even viewed. As the court stated in *Weinberg*, "[t]here is no authority which would permit a private plaintiff to pursue an advertiser because an advertisement might deceive members of the audience and might influence a purchasing decision when the plaintiff himself was neither deceived nor influenced. There is certainly nothing in the statute which suggests such a private right." *Id.* Therefore, upon the facts of the instant case, Appellant has failed to articulate why the class is entitled to a presumption of reliance where the definition of the class is not at the very least limited to GreenMountain customers who allegedly viewed the false advertisements.

¶ 14 Order **AFFIRMED**.

---

1. We note that although Appellant has framed his first question in the broadest of terms, asking whether reliance "can ever be established" by a presumption under the UTPCPL, we decline to address such a question as its scope is beyond the facts of this case. Thus, our decision here is limited to a holding that under the facts of this case, Appellant is entitled to no such presumption.