# Toth v. Northwest Savings Bank

*Andrew M. Gross, T. Brent Jordan, Todd D. Carpenter, Elaine A. Ryan* and *Michael W. Sobol,* for plaintiff.

*Roy W. Arnold,* for defendant.

WETTICK, *J.,* March 1, 2013—This opinion addresses two issues that are not resolved by the Pennsylvania appellate courts: (1) does the economic loss doctrine apply to private actions based on the catch-all provision of the Pennsylvania Unfair Trade Practices and Consumer Protection Law and (2) can a consumer pursue a private action based on the catch-all provision of the Pennsylvania Unfair Trade Practices and Consumer Protection Law without offering testimony regarding reliance?

PLAINTIFF'S FIRST AMENDED COMPLAINT

In her first amended complaint, plaintiff alleges that she was the victim of a deceptive practice in which Northwest Savings Bank ("Northwest") maximized overdraft charges by (1) waiting until the end of a business day to determine whether the account balance in a customer's checking account was sufficient to cover all debit transactions occurring between the end of the prior business day and the end of the current business day and (2) where there were multiple transactions within this period, reordering the debit transactions from the highest to lowest amounts, thereby maximizing the overdraft fees charged to the account holder whenever the total charges against the account at the end of the business day exceeded the account balance. In other words, a customer could incur overdraft charges in instances where there were sufficient funds in the account to cover the transaction at the time of the transaction.

EXAMPLE: The balance of the customer's checking account as of 12:01 A.M. on Wednesday is $3,000; debit card transaction 1 at 7:00 A.M. - $7.27; transaction 2 at 8:15 A.M. - $4.21; transaction 3 at 12:37 P.M. - $21.16; transaction 4 at 1:01 P.M. - $3.13; transaction 5 - $2,989.00 at 3:30 P.M.

If this account was posted in chronological order, the customer would incur only one overdraft charge. If the account was posted from lowest to highest at the end of the business day, the customer would be charged for one overdraft. However, if the account is posted from highest to lowest at the end of the business day, the customer incurs

four separate overdraft charges. Under this third scenario, in which transaction 5 is posted first and transaction 3 second, the bank will assess overdraft charges on four transactions for which the actual funds in the customer's account were sufficient at the time of each transaction to cover the debits submitted for payment.

The subject of this opinion and order of court is Northwest's preliminary objections to plaintiff's first amended complaint which raises the following five counts:

## COUNT 1 - BREACH OF CONTRACT/BREACH OF THE COVENANT OF GOOD FAITH & FAIR DEALING

Plaintiff alleges that Northwest, through its overdraft policies and practices described in the first amended complaint, breached the covenant of good faith and fair dealing implicit in the deposit agreement. Northwest has not filed preliminary objections as to this count.

## COUNT II - UNCONSCIONABILITY

I am sustaining Northwest's preliminary objection seeking dismissal of this count for the reasons set forth at pages 11-13 of my opinion in *Henry v. PNC Bank,* No. GD-10-022974, 160 P.L.J. 303, 306 (Allegheny C.P. Jan. 31, 2012).[1]

## COUNT III - UNJUST ENRICHMENT

I am sustaining Northwest's preliminary objections

---

1. Henry is attached to this opinion as attachment 1.

seeking dismissal of this count for the reasons set forth at page 14 of my opinion in the Henry litigation. 160 P.L.J. at 306.

## COUNT IV - RELIEF PURSUANT TO DECLARATORY JUDGMENT ACT

Plaintiff alleges at page 14, footnote 1, of its original complaint that Northwest's deposit agreement now provides for Northwest to post customers transactions in the order it receives them. Consequently, I am dismissing this count.

## COUNT V - VIOLATION OF THE PENNSYLVANIA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW

Under 73 P.S. §§201-9.2 of the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("Consumer Protection Law"), a consumer who suffers any ascertainable loss of money as the result of the use or employment of a method, act, or practice declared unlawful at §201-2(4) may bring a private action in which the consumer may seek an award of costs, reasonable attorney fees, and up to three times the actual damages sustained. Plaintiff seeks recovery under §201-2(4)(xxi), which includes among the unlawful practices "Engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding." This section is referred to as the catch-all provision.

Northwest does not challenge plaintiff's contention that Northwest's debit charge re-sequencing policies

and practices may constitute "fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding."[2]

Northwest contends that the Consumer Protection Law claims fail for two independent reasons: (1) the claims are barred by the economic loss doctrine and (2) plaintiff has failed to allege justifiable reliance.

## Economic Loss Doctrine

Under the economic loss doctrine, no cause of action may be maintained in tort where the only injury is economic-that is any loss not arising out of a physical injury or damage to personal property. Northwest correctly states that through count V plaintiff seeks only monetary damages-she is not seeking damages for physical injury or damage to personal property. Thus, I consider whether a statutory claim may be barred by the economic loss doctrine.

If I was to apply the economic loss doctrine to a claim based on practices that constitute fraudulent or deceptive conduct which creates a likelihood of confusion or misunderstanding, this catch-all provision would be rendered nearly meaningless. Consumers raising claims under this catch-all provision have not sustained physical injuries or damage to property; their only damages are economic losses. Most of their claims may be summarized

---

2. In its preliminary objections, Northwest does not contend that the writings furnished to its customers adequately explained that Northwest might not post charges to the account in chronological order.

as follows: "we did not get what we paid for because the defendant engaged in fraudulent or deceptive conduct."

Within the past few years, hundreds of lawsuits raising claims under the Consumer Protection Law for economic losses have been filed in this court based on what are referred to as *unfair insurance practices*. For example, an insurance agent falsely represents that the life insurance policy which the plaintiff is purchasing will be fully paid through monthly payments of $100 for seven years.

Similarly, lawsuits are regularly filed by buyers of residential property under the Consumer Protection Law to recover damages based on the seller's fraudulent misrepresentations or material omissions. For example, the seller failed to disclose that the house was not connected to the public sewer system as required by municipal ordinance.

It would be Northwest's contention that in these examples the economic loss doctrine bars recovery under the Consumer Protection Law. Northwest relies on *Werwinski v. Ford Motor Co.,* 286 F.3d 661 (3d Cir. 2002). In that case, the plaintiffs purchased Ford vehicles for family and household purposes, which were allegedly known by Ford to contain defective components. The plaintiffs sued Ford for breach of express warranty, breach of implied warranty, fraudulent concealment, and violations of the Consumer Protection Law. Ford sought dismissal of the tort and Consumer Protection Law claims contending that they are barred by the economic loss

8

doctrine.

The court, applying Pennsylvania law, addressed three issues:[3]

The first issue was whether the economic loss doctrine applies to consumer transactions or only to commercial transactions. The court ruled in favor of Ford *Id.* at 674.

The second issue was whether the economic loss doctrine applies to intentional fraud actions. The court again ruled in favor of Ford. While the court found some merit to the plaintiffs' position that there should be an intentional fraud exception to the economic loss doctrine in order to deter fraudulent behavior, it ruled in favor of Ford on the ground that the plaintiffs have been unable to explain why contract remedies are inadequate to provide redress. *Id.* at 679-80.

The third issue the court considered was whether the economic loss doctrine bars claims under the Consumer Protection Law. The court stated that exempting a statutory fraud claim from the effect of the economic loss doctrine would virtually nullify the doctrine. Thus, the same policy justification for applying the doctrine to common law intentional fraud claims supports the doctrine's application to claims under the Consumer Protection Law. *Id.* at 681.

I agree with the *Werwinski* court that a ruling that the economic loss doctrine does not apply to claims raised

---

3. The *Werwinski* court correctly stated that no Pennsylvania appellate court had resolved these three issues, which as of this date remain unresolved.

under the catch-all provision of the Consumer Protection Law will virtually nullify the doctrine in consumer transactions. However, as I previously discussed, if the economic loss doctrine applies to private actions brought under the catch-all provision of the Consumer Protection Law, in almost all instances a private action will be barred by the economic loss doctrine.

Nothing in the language of the Consumer Protection Law suggests that private actions are subject to the economic loss doctrine. To the contrary, the clear and unambiguous language of the Consumer Protection Law provides for any victims of consumer fraud to recover not only actual damage but also punitive damages and counsel fees. Thus, the Legislature's intent is clear. In private actions, the victims of fraudulent or deceptive practices are to be fully compensated.

The controlling issue, therefore, is whether the economic loss doctrine gives way to the Consumer Protection Law or whether §9.2 of the Consumer Protection Law gives way to the economic loss doctrine. The answer is clear.

The economic loss doctrine is court-created. The Consumer Protection Law expresses the will of the Legislature. Unless constitutional issues are involved, case law may not interfere with legislation[4] *See Seebold v. Prison Health Servs., Inc.*, 57 A.3d 1232, 1245 n. 19 (Pa. 2012) ("[I]t is the Legislature's chief function to set

---

4. *Werwinski* never addressed the issue of why a court-created doctrine can trump legislation.

public policy and the courts' role to enforce that policy subject to constitutional limitations.") (quoting *Program Admin. Servs., Inc. v. Dauphin County Gen. Auth.*, 928 A.2d 1013, 1017-18 (Pa. 2007)). Thus, the economic loss doctrine does not apply to private actions under the Consumer Protection Law.

Several trial courts, in rulings that are not binding on this court, have said that the economic loss doctrine does not bar claims under the Consumer Protection Law, including *Smith v. Reinhart Ford*, 68 Pa. D.&C.4th 432, 437-38 (Lancaster C.P. 2004); *Zwiercan v. General Motors Corp.*, 58 Pa. D.&C.4th 251, 266-70 (Phila. C.P. 2002); and *Oppenheimer v. York Int'l*, No. 020304348, 2002 WL 31409949, *6 (Phila. C.P. 2002). *See also In re Sears, Roebuck & Co.*, No. MDL-1703, 2009 WL 937256, *9 (N.D. Ill., Apr. 6, 2009); and *In re New England Mut. Life Ins. Co. Sales Practices Lit. v. New England Mut. Life Ins. Co.*, 2003 WL 25953191, *11 (D.Mass., 2003). But *see Fogel v. Lambert*, No. C-48-CV-2011-4473, 2011 WL 7758352 (Northumberland C.P. Mar. 28, 2012).

Failure to Allege Justifiable Reliance

Plaintiff's first amended complaint never mentions reliance. Northwest contends that plaintiff cannot bring this action without pleading (and proving) individual reliance.[5] Thus, according to Northwest, this lawsuit must be dismissed unless plaintiff seeks to file a second

---

5. Whenever individual reliance must be established, courts will not permit the lawsuit to proceed as a class action-see discussion of the case law at pages 10-15 of this opinion.

amended complaint containing factual allegations which support a finding of justifiable reliance. I disagree.

The fraudulent or deceptive conduct alleged by plaintiff is Northwest's use, without obtaining the permission of its account holders, of a method for calculating overdrafts favorable to Northwest. The fraud consists of an omission-the Bank's imposing charges without authorization. Thus, every account holder who paid additional fees has been harmed.

While Northwest contends that the case cannot proceed without allegations as to reliance, Northwest never explains what individualized testimony is required.

In other words, the fraudulent or deceptive conduct is the reordering of transactions out of chronological order without the account holder's permission. The damages are the excess charges incurred from the use of this system without the account holder's consent. This class is limited to only those persons who have been overcharged.

In fraud cases, the requirement that a plaintiff establish reliance is imposed solely to determine the extent to which (if at all) the plaintiff or a member of the class was actually harmed by the fraudulent or deceptive conduct. Where, as in the present case, a lawsuit is brought only by persons who were actually harmed by the bank's deceptive conduct, and who sustained actual losses as a result of improper overdraft charges, a reliance requirement serves no purpose.

The Consumer Protection Law, as written, permits a

consumer to bring a private action if the consumer has suffered any ascertainable loss of money as the result of the use or employment of fraudulent or deceptive conduct. To recover, the plaintiff must establish that plaintiff was a victim of a fraud or deceit (requirement one) and that plaintiff suffered an ascertainable loss (requirement two).

Where the fraud or deceit is a misrepresentation, requirement one is met if the plaintiff can show a material misrepresentation and an intent to misrepresent. However, Requirement Two is not met without a showing justifiable reliance.

EXAMPLE ONE: The insurance agent advised the customer-a forty-five-year-old accountant-that if the accountant/customer makes a monthly payment of $100 until age sixty-five, the accountant will have a fully paid insurance policy that will provide insurance in the amount of $1 million upon the accountant's death. The accountant later learns that at age sixty-five he is guaranteed a fully paid policy that will pay only $30,000 upon the accountant's death. The law is not going to presume that the accountant, at the time he purchased the policy, believed that payments of $24,000 over a twenty-year period would produce a $1 million insurance policy. Thus, reliance must be shown to establish an ascertainable loss.

However, a showing of actual reliance should not be required when ascertainable losses necessarily flow from the fraud or deceit. Consider the following examples:

EXAMPLE TWO: The agreement between the car

dealer and the purchasers permitted the car dealer to add the manufacturer's transportation fees to the agreed-upon purchase price.

The car dealer pays only $71 to the manufacturer for transportation fees but charges the purchasers $171 for transportation fees. Upon a showing that the car dealer is fraudulently overcharging purchasers, each member of the class of persons who paid the inflated amount should be entitled to recover the difference between the overcharged amount and the actual costs in addition to the other relief provided for in section 9.2 of the Consumer Protection Law.

EXAMPLE THREE: A financial advisor places orders on behalf of his clients with a broker who, at the request of the financial advisor, sends an invoice to the advisor for a placement fee of $100 for each order. The financial advisor passes on the fee to the client. The broker, in fact, does not charge placement fees. Upon proof of the kickback scheme, the clients of the financial advisor should be entitled to recover the placement fee and the other relief provided for in section 9.2 of the Consumer Protection Law.

EXAMPLE FOUR: The contractor of a housing development, who knows of the requirements of the building code, is, unbeknownst to the purchasers, using roofing materials that do not comply with code standards. The use of noncomplying roofing materials was discovered when a fire at one of the dwellings resulted

in every homeowner being required by the building inspector to replace his or her roof. Each homeowner should be entitled to recover, at a minimum, the cost of replacing the roof and other relief provided by section 9.2 of the Consumer Protection Law upon a showing that the contractor knowingly installed roofs that did not comply with code standards.

In Examples Two and Three, the defendants obtained money belonging to each member of the class as a result of the defendants' representations and omissions. Thus, reliance testimony is not needed to establish an ascertainable loss.

In Example Four, reliance is not a requirement for establishing that the class members sustained an ascertainable loss because the loss flows necessarily from proof of the fraud.

For Examples Two and Three, the Consumer Protection Law should not be construed to require the named plaintiffs and class members to offer speculative testimony as to whether they would have purchased the car (Example Two) or placed orders (Example Three) even if they had known that they would be cheated. The inflated transportation fee (Example Two) and charging the client a non-existent placement fee (Example Three) are the fraudulent acts, and the ascertainable losses are the fraudulent charges.

For Example Four, if the Pennsylvania courts would require the named plaintiff and the class members to offer

speculative testimony that they would not have purchased the property if told that the roof did not comply with code requirements and would need to be replaced, they would be creating reliance requirements that are so robust as to almost eliminate class actions based on deceptive conduct. Since the Consumer Protection Law never mentions reliance as a prerequisite for recovery, this cannot be what the Legislature intended.

In support of its contention that plaintiff must allege justifiable reliance, Northwest relies on the following three Pennsylvania Supreme Court cases: *Toy v. Metropolitan Life Ins. Co.*, 928 A.2d 186 (Pa. 2007); *Yocca v. Pittsburgh Steelers Sports, Inc.*, 854 A.2d 425 (Pa. 2004); and *Weinberg v. Sun Co.*, 777 A.2d 442 (Pa. 2001).

In Weinberg, the named plaintiffs were purchasers of Sunoco Ultra® Gasoline. They alleged that Sunoco's advertisements induced customers to purchase Ultra® when their vehicles did not need the high level of octane the gasoline contained. Following a hearing, the trial court denied class certification, stating that fraud claims based on the catch-all provision of the Consumer Protection Law require proof of reliance and causation; thus, a private action under the Consumer Protection Law may be brought only by purchasers who were aware of and believed the false message that Ultra® would enhance engine performance and purchased Ultra® for that reason. 777 A.2d at 444.

The Superior Court reversed on two of the four

Consumer Protection Law claims, holding that false advertising claims do not require proof of reliance and causation. *Id.* The Supreme Court reinstated the ruling of the trial court, stating that there is no authority which would permit a private plaintiff to pursue an advertiser because an advertisement might deceive members of the audience and might influence a purchasing decision when the plaintiff was neither deceived nor influenced. Section 9.2 of the Consumer Protection Law clearly requires, in a private action, that a plaintiff suffer an ascertainable loss as a result of the defendant's prohibited action. "That means, in this case, a plaintiff must allege reliance, that he purchased Ultra® because he heard and believed Sunoco's false advertising that Ultra® would enhance engine performance." *Id.* at 446.

In Yocca, the plaintiffs' claims included violations of the Consumer Protection Law based on alleged fraudulent misrepresentations made by Pittsburgh Steelers Sports, Inc. relating to the location of seat licenses at Heinz Field in a brochure sent to the plaintiffs. 854 A.2d at 432. The Pennsylvania Supreme Court dismissed the claim noting that the plaintiffs failed to specifically allege they justifiably relied on representations in the brochure when entering into an agreement with the Steelers to purchase seat licenses. *Id.* at 439 n.27. The court stated that, in fact, it was impossible for the plaintiffs to claim justifiable reliance because the seat-license agreement contained an integration clause stating that the terms of the agreement supersede all previous representations and agreements. *Id.*

at 439. This case simply holds that a person who enters into an agreement and receives that to which he is entitled under the contract has not suffered a loss as a result of fraud and may not pursue claims under the Consumer Protection Law.

In *Toy*, the policyholder of a Metropolitan Life Insurance policy based her claims under the Consumer Protection Law on representations made by the insurance agent that, if she made monthly payments of fifty dollars, the plan would generate a fund of approximately $100,000 when she reached age sixty-five. 928 A.2d at 189. This was a fraudulent misrepresentation. The policy set forth a guaranteed cash value at age sixty-five of only $11,008.86 based on a guaranteed interest rate of four percent per year. *Id.* at 190. The insurance company contended, on the basis of Yocca, supra, that the policyholder could not have justifiably relied upon the representations of the insurance agent because the policyholder received an integrated insurance policy which informed the policyholder that she could return the policy within ten days and which contained accurate information on the policy's coversheet that, if read, would show that the agent's representations were false. *Id.* at 203.

The Pennsylvania Supreme Court rejected the policyholder's contention that a relaxed reliance standard applies to private actions based on the catch-all provision. It ruled that common law fraud standards govern fraud claims based on the catch-all provision of the Consumer Protection Law. *Id.*

The Supreme Court next rejected the ruling of the trial court that the plaintiff could not establish reliance on the misrepresentations of the agent because of the accurate information subsequently made available in the policy delivered to the policyholder. The court held that it was for the jury to decide whether the policyholder reasonably relied on the insurance agent's misrepresentations. *Id.* at 207-08.

*Weinberg, Yocca,* and *Toy* support the requirement, which plaintiff does not contest, that a class may not include persons who did not sustain actual losses as a result of the defendants' conduct: *Weinberg* sought to include persons who never knew of Sunoco's representations; *Yocca* sought recovery where it was impossible for the named plaintiff and class members to establish any damages; and *Toy* (not a class action) sought recovery where the plaintiff, subsequently provided with accurate information, may not have sustained losses as a result of the agent's prior representations.

Northwest also relies on the following Superior Court opinions: *Debbs v. Chrysler Corp.*, 810 A.2d 137 (Pa. Super. 2002); *Sexton v. PNC Bank*, 792 A.2d 602 (Pa. Super. 2002); *Aronson v. GreenMountain.com*, 809 A.2d 399 (Pa. Super. 2002); and *DiLucidio v. Terminix Int'l, Inc.*, 676 A.2d 1237 (Pa. Super. 1996). These cases also do nothing more than prohibit certification of a class which includes persons who did not sustain actual damages solely as a result of the defendant's fraudulent conduct.

In *Debbs*, the named plaintiff brought a class action alleging that Chrysler violated the catch-all provision of the Consumer Protection Law by selling automobiles without disclosing that its automobiles contained defective airbags. 810 A.2d at 142. The named plaintiff alleged that he would not have purchased the car if Chrysler had disclosed that the airbag was defective. *Id.* at 144.

The trial court permitted the lawsuit to proceed as a class action. The Superior Court overturned the judgment in favor of the class because the trial court improperly certified the Consumer Protection Law claim. The issue the Superior Court addressed was whether class members could prevail without establishing that they would not have purchased the vehicle if they had known of the defective airbags.

In this case, Chrysler allegedly withheld information that persons had been burned after the airbag deployed. However, it was undisputed that the risk of serious burns would arise only after the automobile was involved in an accident of sufficient severity to cause the airbag to deploy. Also, it was undisputed that the risk of serious burns is relatively low. The burn rate was 16.3 per 100,000 automobiles. This rate took into account all types of burns of all levels of severity. *Id.* at 158.

The plaintiff contended that reliance should be presumed where the fraud involves omissions of objectively material information; he argued that federal and state courts have presumed class-wide reliance where the fraud

involves omissions of objectively material information. *Id.* at 157-58. The Superior Court did not accept or reject the concept of presumed class-wide reliance. The court explained that such a concept would not apply to this case in which there was almost no likelihood that a buyer would actually suffer serious burns. The court stated that consumers could have

> "a wide range of reactions to the undisclosed information, depending on a number of factors including: (1) the personal degree of risk-aversion; and (2) their assessment of the other advantages and disadvantages of buying a Chrysler automobile. Some consumers may not have bought a Chrysler at all; others may have bought the car but replaced the air bags; and others may have bought the car but not replaced the air bag. Reasonable consumers could come to different conclusions about the materiality of the withheld information."[6]

*Id.* at 158.

In *Sexton,* 792 A.2d at 603-04, PNC Bank charged persons who were not PNC depositors a check-cashing fee of $3.00. The plaintiff sued on behalf of all payees of checks drawn on PNC Bank who did not have an account

---

6. *Debbs* differs from the present case because in *Debbs* the alleged defect had almost no impact on the purchasers as a class. *Debbs* would look like the present case only if, for example, airbags frequently deploy and every airbag that deploys causes serious burns. In all likelihood, at some point, the case law would presume that every purchaser has been harmed because no purchaser would have purchased a vehicle with this defect.

with PNC. The court ruled that the customers did not state a claim under the Consumer Protection Law because the plaintiff failed to allege either that she incurred a fee in reliance on any representation by a bank employee, or that the bank did not disclose the fee. *Id.* at 608.

In *Aronson*, the plaintiff filed a class action under the Consumer Protection Law against GreenMountain, the supplier of electric generation services, for disseminating false advertisements to Pennsylvania consumers. 809 A.2d at 401. The plaintiff's complaint averred that the advertisements falsely portrayed the total cost of its electricity to be less than it actually was, and the plaintiff sought to recover damages for losses as a result of the false advertising. *Id.* The court stated that this lawsuit was governed by the *Weinberg* case. *Id.* at 402. It ruled that the trial court did not err in refusing the plaintiff's request for an evidentiary presumption of reliance because the plaintiff failed to articulate why the class is entitled to a presumption of reliance where the definition of the class is not at the very least limited to GreenMountain customers who allegedly viewed the false advertisements. *Id.* at 405.

In *DiLucidio*, 676 A.2d at 1241, the court stated: "We find that in order to proceed with their claims under the [Consumer Protection Law], Appellants must be able to establish that the alleged misrepresentations by Appellee caused their loss." Thus, the court dismissed the claims based on false advertisement because there was insufficient evidence to establish that the plaintiffs retained Terminix because of their advertisements.

In summary, the cases upon which Northwest relies require testimony establishing reliance because a finding of reliance is needed in order to establish that the plaintiff suffered an ascertainable loss as a result of the defendant's use or employment of fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding.

In the present case, a finding of reliance is not needed to establish an ascertainable loss. The fraud or deceit is taking the money of plaintiff and the class members without permission. Plaintiff's ascertainable losses are the overcharges imposed on plaintiff because of defendant's scheme for calculating overdraft fees. Testimony as to reliance is not needed to establish ascertainable losses.

In summary, I recognize there is no Pennsylvania appellate court case law which has, through either a holding or in dicta, discussed whether testimony of the plaintiff addressing reliance is required where an ascertainable loss can be established without such testimony. However, there is no reason why case law would require such testimony in this instance. Furthermore, there is statutory authority for my ruling overruling Northwest's preliminary objections in the nature of a demurrer. Under the clear language of the Consumer Protection Law, there are two requirements for maintaining a private action under the catch-all provision a showing of fraud or deceit and a showing of an ascertainable loss. When, as in this case, both requirements are met, the consumer is entitled to the amount of the actual losses and other relief provided for in

section 9.2 of the Consumer Protection Law.

For these reasons, I enter the following order of court:

## ORDER OF COURT

On this 25th day of June, 2013, upon consideration of defendant's preliminary objections to plaintiff's first amended complaint, it is ordered that counts II, III, and IV are dismissed, and the preliminary objections as to count V are overruled.