Bridget A. PIPER, Plaintiff,

v.

**PORTNOFF LAW ASSOCIATES, et al., Defendants.**

No. CIV.A. 03–2046.

United States District Court, E.D. Pennsylvania.

May 15, 2003.

David A. Searles, Esquire, Philadelphia, PA, for Plaintiff.

William F. McDevitt, Esquire, Philadelphia, PA, for Defendants.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

KATZ, Senior District Judge.

Plaintiff Bridget Piper brings this action against the defendants under the federal Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692 *et seq.*, the Pennsylvania Fair Credit Extension Uniformity Act (FCEUA), 73 P.S. § 2270.1 *et seq.*, and the Pennsylvania Unfair Trade Practices and Consumer Protection Law

(CPL), 73 P.S. § 201–1, *et seq.* The plaintiff charges that the defendants have not complied with their obligations under these laws and that she is being charged excessive collection fees and costs by defendants in their attempt to collect an overdue water bill. Specifically, the plaintiff alleges that the defendants violated the FDCPA by charging "an amount (including any interest, fee, charge, or expense incidental to the principal obligation)," that was not expressly authorized by the debt agreement or permitted by law. *See* 15 U.S.C. § 1692f(1). In addition, the plaintiff claims that the defendants' letters did not inform the recipient that they were from a debt collector as required by 15 U.S.C. § 1692e(11),[1] nor did the letters include validation notices pursuant to 15 U.S.C. § 1692(g).[2] Presently before the court is plaintiff's motion for a preliminary injunction preventing the sheriff's sale of the plaintiff's home and the homes of potential class members. For the reasons set forth below, the plaintiff's motion is granted as to the individual plaintiff.

## I. Findings of Fact

1. On April 18, 2000, the City of Bethlehem retained Portnoff Law Associates ("PLA") as its exclusive attorney for the enforcement of delinquent municipal claims arising from water, sewer, trash, and tax assessments.[3]

2. On February 20, 2002, the City of Bethlehem notified PLA of a delinquent water assessment in the amount of $252.71 against the real property located at 828 Kossuth Street, Bethlehem, PA 18018. On that date, PLA confirmed that Michael and Bridget Piper were the registered owners

---

1. 15 U.S.C. § 1692e(11) provides that it is a violation of the act when a party fails

> to disclose in the initial written communication with the consumer and, in addition, if the initial communication with the consumer is oral, in that initial oral communication, that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose, and the failure to disclose in subsequent communications that the communication is from a debt collector, except that this paragraph shall not apply to a formal pleading made in connection with a legal action.

2. 15 U.S.C. § 1692g provides that

> Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—
> (1) the amount of the debt;
> (2) the name of the creditor to whom the debt is owed;
> (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;

> (4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and
> (5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

3. On December 22, 1999, the City of Bethlehem enacted Ordinance No. 3988, which provided the following schedule for attorney fees for various lien enforcement services: Internal review and sending first demand letter–$150.00; File lien and mailing second demand letter–$150.00; 3) Prepare Writ of Scire Facias–$150.00 Re–issue Writ–$25; Prepare and mail letter under Pa. R. Civ. P. 237.1; Prepare motion for alternate service–$175.00; Prepare motion for summary judgment and related judgment–$150; Prepare write of execution–$750; and Attendance at Sale; Review schedule of distribution and resolve distribution issues–$400.00.

of the real property located at 828 Kossuth Street.

3.  Mr. and Mrs. Piper reside in their home with their three children, ages 5, 9, and 10, and three cats and two dogs. Mr. Piper earns approximately $1600 before taxes as a construction worker while Mrs. Piper earns approximately $500 per month before taxes. Mrs. Piper also receives $100 a month in back child support owed for one of her children. Therefore, the family's total gross monthly income is approximately $2,200.

4.  The Piper family's estimated monthly expenses are as follows: Mortgage payment—$593; electricity—$110; food—$600; pet food and vet bills—$100; gas—$150; cable—$69; phone—$40; medical bills—$40; Bethlehem water and sewer—$22; Freemansburg sewer—$20; municipal trash collection $10; clothing $150; gas for Michael Piper's work truck—$200; charitable contributions—$15; and miscellaneous household expenses.

5.  The plaintiff's home is worth approximately $64,000, and has a mortgage balance of about $60,000.

6.  On February 21, 2002 PLA sent a notice of delinquency by certified mail, return receipt requested, to Mr. and Mrs. Piper. This notice advised the Pipers that they owed the City of Bethlehem $252.75 for delinquent water fees. Although on City of Bethlehem letterhead, the notice directed the Pipers to contact PLA with any questions within 30 days to avoid the imposition of legal fees.

7.  The February 21, 2002 letter did not state that a debt collector sent it, that the debt collector was attempting to collect a debt, or that any information obtained would be used for the purpose. The February 21st letter also failed to include the validation of debt language described in the Fair Debt Collection Act, 15 U.S.C. § 1692g.

8.  PLA did not receive a response to the February 21, 2002 notice of delinquency.

9.  On April 4, 2002, PLA mailed a second demand letter to Mr. and Mrs. Piper advising them that they now owed the City of Bethlehem $404.37 which included the delinquent water bill, interest, penalties and "the costs of collection." [4] Statement of Bridget Piper, exh. B. The letter also threatened Mr. and Mrs. Piper that "[u]nless payment of the above amount is received by PORTNOFF LAW ASSOCIATES, LTD. at POB 40, Wynnewood, PA 19096–0540 within ten (10) days of the date of this letter, a lien will be filed against your property.... *Payment must be made in full. Id.* Like the first letter, the April 4th letter failed to contain the validation language described in the FDCPA.

10.  On April 8, 2002, Mrs. Piper called PLA and requested verification of the dates of delinquency.

11.  On April 11, 2002, PLA obtained a customer payment history for the property from the City of Bethlehem.

12.  On April 22, 2002, PLA contacted Mrs. Piper and advised her of the delin-

---

4.  The Municipal Claims and Tax Liens Act, 53 P.S. § 7106 provides:

> (a) All municipal claims which may hereafter be lawfully imposed or assessed on any property in this Commonwealth ... shall be and they are hereby declared to be a lien on said property, together with all charges, expenses, and fees incurred in the collection of any delinquent account, including

> reasonable attorney fees under subsection (a.1), added thereto for failure to pay promptly; ...
> (a.1) *It is not the intent of this subsection to require owners to pay, or municipalities to sanction, inappropriate or unreasonable attorney fees, charges or expenses for routine functions.*
> (Emphasis added).

quency was for the second and third quarters of 2001. Mrs. Piper stated that the delinquent water fees would be paid by April 15, 2002, or she would call to make alternative arrangements.

13. On May 9, 2002, PLA wrote and mailed another letter notifying Mr. and Mrs. Piper that the City of Bethlehem filed a lien against their property. This letter informed Mr. and Mrs. Piper that $576.07 was due to clear the lien. Exh. C.

14. On May 29, 2002, PLA filed a Writ of Scire Facias against real property located at 828 Kossuth Street.

15. On June 3, 2002 the Northampton County Sheriff served the Writ of Scire Facias upon the record owners of the real property—Mr. and Mrs. Piper.

16. On June 21, 2002, Mrs. Piper called PLA and requested a payment plan. A three-month payment plan was agreed to with the first payment of $276.60 due on July 5, 2002, and subsequent payments due the 5th day of each month thereafter until paid in full.

17. On July 8, 2002, Mrs. Piper called PLA and stated that she forgot to mail the payment and would send the payment that day. On July 10, 2002, PLA received a check from Mrs. Piper in the amount of $276.60. Around this time, Mr. Piper lost his job and the plaintiff was unable to make any additional payments.

18. The $276.60 payment was applied first to outstanding court costs, in the mount (as of that date) of $117.50 and the remainder towards attorney's fees in the amount of $159.10.

19. On August 5, 2002, PLA received another check from Mrs. Piper in the amount of $277.00. This entire amount was applied to outstanding attorney's fees.

20. Without any further communication from Mrs. Piper, PLA mailed a notice to Mr. and Mrs. Piper in accordance with Pa. R. Civ. P. 237.1. This letter informed the Pipers that they had ten days to act or be in default.

21. On October 3, 2002, PLA mailed another notice to Mr. and Mrs. Piper, which again informed the home owners that they had ten days to act or be in default.

22. On November 8, 2002, PLA mailed another letter to Mr. and Mrs. Piper advising them that the next step was the filing of writ of execution. The letter informed the Pipers that they had thirty days to pay the balance due.

23. On January 13, 2003, PLA ordered a title search of the 828 Kossuth Street property which resulted in a cost of $75 that was assessed against the real property.

24. On February 7, 2003, PLA filed a writ of execution against· 828 Kossuth Street. Due to this filing, $750 in attorney's fees, $10 in court costs, and $1500 sheriff's charges were assessed against the property.

25. The present balance due and owing on this lien is $2,806.92 including simple interest, court costs, and legal fees to date.

26. The total amount of simple interest assessed for the delinquent water charges from February 20, 2002 through April 30, 2003 was $18.01.

27. A sheriff's sale was scheduled for May 9, 2003. On April 24, 2003, plaintiff filed a motion for a temporary restraining order to enjoin the sheriff's sale of her home. This court granted the TRO as to the individual plaintiff on May 1, 2003.

*II. Conclusions of Law*

1. In order to obtain a preliminary injunction, the court must consider whether: 1) the movant has shown a reasonable probability of success on the merits; 2) the movant will be irreparably injured by denial of relief; 3) granting

preliminary relief will not result in even greater harm to the nonmoving party; and 4) granting the preliminary relief will be in the public interest. *See Council of Alternative Political Parties v. Hooks*, 121 F.3d 876, 879 (3d Cir.1997). The party seeking the injunction bears the burden of establishing these four elements. *Adams v. Freedom Forge Corp.*, 204 F.3d 475, 484 (3d Cir.2000).

■ 2. The defendants argue that the plaintiff cannot show a reasonable probability of success on the merits because the FDCPA does not apply to their practice. According to the defendants, the FDCPA applies only to "consumer debt" which is statutorily defined as "arising out of a transaction in which money, property, insurance, or services which are the subject of the transaction are primarily for personal, family or. household purposes." 15 U.S.C. § 1692(a)(5). Defendants contend that the delinquent water fees are not debt as defined by the FDCPA.

3. In *Pollice v. National Tax Funding*, 225 F.3d 379 (3d Cir.2000), the Third Circuit held that water and sewer obligations qualified as debt under the FDCPA. Although tax obligations did not meet the definition of debt under the statute, the Third Circuit reasoned that water and sewer fees were debts because, "[a]t the time these obligations first arose, homeowners ('consumers' of water and sewer services) had an 'obligation … to pay money' to the government entities which arose out of a 'transaction' (requesting water and sewer service) the subject of which was 'services … primarily for personal, family, or household purposes.'" *Id.* at 400.

4. The defendants attempt to distinguish *Pollice* in three ways. First, defendants argue that the plaintiffs in *Pollice* requested water services so the city was acting in a proprietary role. In *Staub v. Harris*, 626 F.2d 275 (1980), the Third

Circuit held that in order for a debt to arise from a transaction within the meaning of the FDCPA, the obligation must be the result of a pro tanto exchange. *Id.* Defendants contend that Bethlehem water services are not "requested" but instead are "fairly apportioned between and among all real property owners. The prices for such services are substantially based in part upon the necessary expenditures incurred by the municipality to assure that services may be delivered in the present (labor, trash interring fees, water treatment costs) and in the future (maintenance, new construction)." Witness Statement for Michele Portnoff, at 17. Therefore, the municipal assessments and liens enforced by PLA on behalf of Bethlehem are not pro tanto transactions but "public burdens imposed generally upon the inhabitants of the whole municipality." *Staub*, 626 F.2d at 278. However, this argument disregards the Third Circuit's holding in *Pollice*. While the *Pollice* court relied on *Staub* to conclude that tax obligations are not debts under the FDCPA, the Third Circuit reasoned "at a minimum, the statute contemplates that the debt has arisen as a result of the rendition of a service or purchase of property or other item of value. The relationship between taxpayer and taxing authority does not encompass the type of pro tanto exchange which the statutory definition [of debt] envisages." *Pollice*, 225 F.3d at 401 (quoting *Staub*, 626 F.2d at 278). In this case, the City of Bethlehem rendered a service to the plaintiff Although certain fees were "fairly apportioned" among all property owners and "run[ ] with the property," witness Statement for Michele Portnoff, at 19, the more water an individual uses, the greater his water bill. Therefore, providing water service to the citizens of Bethlehem is a pro tanto exchange, and the delinquent water charges fall within the FDCPA's definition of debt.

■ 5. Second, defendants argue that the water and sewer assessments in *Pollice* were levied against the individuals rather than the real property. Defendants argue that in rem proceedings cannot constitute consumer debt under the FDCPA. In *Pollice,* the Third Circuit wrote that the plain meaning of 15 U.S.C. § 1692a(5) "indicates that a 'debt' is created whenever a consumer is obligated to pay money as a result of a transaction whose subject is primarily for personal, family, or household purposes." 225 F.3d at 401. Therefore, a debt collector's decision to proceed in rem rather than in personam is insignificant when determining whether the underlying obligation falls within the FDCPA's statutory definition. If a debt collector were able to avoid liability under the FDCPA simply by choosing to proceed in rem rather than in personam, it would undermine the purpose of the FDCPA. As long as the underlying obligation constitutes consumer debt, debt collectors proceeding in rem are not exempt from the FDCPA[5] Otherwise, enforcement of security interests in sales of household goods would be exempt from FDCPA protection.

■ 6. Third, defendants argue that they are not debt collectors as defined in the FDCPA because they fall within the municipal officers' exception to the act. The FDCPA defines a debt collector as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692(a)(6). The definition excludes several categories of persons, including officers or employees of government. *Id.* In *Pollice,* the Third Circuit held that the government employee exemption "does not extend to those who are merely in a contractual relationship with the government." 225 F.3d at 406. Because the exemption is expressly limited to "any officer or employee of the United States or any State," 15 U.S.C. § 1692(a)(6)(C), PLA qualifies as a debt collector under the statute.

■ 7. Plaintiff is a consumer as defined by the FDCPA. 15 U.S.C. § 1692a(3).

■ 8. The letters sent by the defendants are each a "communication" relating to a "debt" as defined by the FDCPA. 15 U.S.C. §§ 1692a(2), (5).

■ 9. There is a reasonable probability that a court would likely find the PLA letters misleading, or deceptive within the meaning of the FDCPA because they did not include disclosures required for initial communications sent to consumers by debt collectors in violation of 15 U.S.C. §§ 1692a, 1692f, 1692g, nor did the letters

---

5. The defendants point to this court's approval of a stipulated settlement agreement in a similar class action in which the court wrote: The court acknowledges and agrees that municipal assessments and liens against real property do not fall within the definition of "consumer debt" under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et. seq.* ("FDCPA"), and, therefore, the provisions of the FDCPA do not apply to defendants' activities on behalf of local governments (as alleged in the Amended Complaint).

*Parks v. Portnoff Law Associates, Ltd.,* 210 F.R.D. 146 (E.D.Pa.2002). Since the settlement, this court became aware of the Third Circuit's decision in *Pollice v. National Tax Funding,* 225 F.3d 379 (3d Cir.2000). The *Pollice* decision contradicts this court's statement in approving the prior settlement and controls the case presently before the court. The court also pointed out in approving the settlement of the prior case that the issues could be litigated in other cases.

disclose that they were from debt collectors as required by 15 U.S.C. § 1692e(11).

10. There is a reasonable probability that a court would likely find that the amount of fees and costs sought by defendants were not expressly permitted by the agreement between the plaintiff and the City of Bethlehem for water/sewer service to the plaintiff's home, nor were they permitted by law. Although the City of Bethlehem approved these fees in a city ordinance and the Municipal Claims and Tax Liens Act (MCTLA), 53 P.S. § 7106 allows for the imposition of attorney's fees and court costs to be assessed against an individual's real property, section 7106(a.1) states:

> (a.1) It is not the intent of this subsection to require owners to pay, or municipalities to sanction, inappropriate or unreasonable attorney fees, charges or expenses for routine functions.

In this case, PLA sent the plaintiff a letter in April, 2002 and assessed the plaintiff $150 in attorney's fees. Under the MCTLA, a court [6] shall consider:

> (1) The time and labor required, the novelty and difficulty of the questions involved and the skill requisite to properly undertake collection and representation of a municipality in actions arising
> . . . .
> (2) The customary charges of the members of the bar for similar services.
> (3) The amount of the delinquent account collected and the benefit to the municipality from the services.
> (4) The contingency or the certainty of the compensation.

53 P.S. § 7106 (a.1). Applying these factors, there is a reasonable probability that a court would likely find it unreasonable for PLA to charge $150 in attorney's fees to prepare and mail a form letter regardless of the time spent in its preparation.[7] Therefore, the attorney's fees are not permitted by law and would likely violate the FDCPA.

11. The plaintiff will suffer immediate irreparable harm if the sheriff's sale of her home is not enjoined pending the outcome of this litigation. The plaintiff owes over $2,800, yet her family's monthly income is approximately $2,200. Without an injunction, the plaintiff will surely lose her home and no monetary damages would compensate the plaintiff for such a loss.

12. The plaintiff has failed to show that the unnamed class members will suffer any irreparable injury; therefore, the injunction shall not enjoin the defendants from proceeding in state court against potential class members. This court is not aware of the personal circumstances of potential class members and cannot conclude that the defendants actions to recover unpaid water and sewer charges will cause irreparable injury.

13. Issuing a preliminary injunction shall not cause a greater harm to the defendants. If the defendants avoid liability at trial, the sheriff's sale shall proceed, and the defendants shall recover their fees and costs. Meanwhile, the bond in this action protects the City of Bethlehem.

14. It is in the public's interest to shield a homeowner from the unlawful actions of a debt collector.

---

6. Section 7106 (a.1) of the MCTLA provides:

[w]here attorney fees are sought to be collected in connection with the collection of a delinquent account, the owner may petition the court of common pleas in the county where the property subject to the municipal claim and lien is located to adjudicate the reasonableness of the attorney fees imposed.

7. The court notes that defendants did not submit into evidence time records documenting the time and labor necessary to process the collection letters mailed to Mr. and Mrs. Piper.

15. While the plaintiffs have met the burden for a preliminary injunction, the defendants argue that federal law prohibits this court from issuing an injunction against the defendants and the sheriff's sale of plaintiff's home. Specifically, the defendants point to the Anti–Injunction Act, 28 U.S.C. § 2283, which provides:

A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by an Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgment.

■ 16. The Anti–Injunction Act is "an absolute prohibition against enjoining State Court proceedings, unless the injunction falls within one of three specifically defined exceptions." *Atlantic Coast Line R. Co. v. Brotherhood of Locomotive Eng'rs,* 398 U.S. 281, 286, 90 S.Ct. 1739, 26 L.Ed.2d 234 (1970). This prohibition against injunctions applies whether the movant seeks to enjoin the parties to the action or the state court itself. *In re General Motors Corp. Pick–Up Truck Fuel Tank Products Liability Litigation,* 134 F.3d 133, 144 (3d Cir.1998). In this case, however, the court is enjoining a particular law firm from continuing the litigation, not a party. As defense counsel conceded at oral argument, the party is still free to proceed with counsel compliant with the FDCPA.[8] In any event, an exception to section 2283 applies.

■ 17. Although a state court proceeding may involve a federal issue, "a federal court does not have inherent power to ignore the limitations of § 2283 and to enjoin state court proceedings merely because those proceedings interfere with a protected federal right or invade an area preempted by federal law, even when the

interference is unmistakably clear." *Atlantic Coast,* 398 U.S. at 294, 90 S.Ct. 1739. "Any doubts as to the propriety of a federal injunction against state court proceedings should be resolved in favor of permitting the state court to proceed in an orderly fashion to finally determine the controversy." *Id.* at 297, 90 S.Ct. 1739.

■ 18. Because the FDCPA does not expressly authorize enjoining state court proceedings, nor does the plaintiff seek to protect or effectuate a federal court's judgment, this court may enjoin the defendants only to aid its jurisdiction. The "necessary in aid of its jurisdiction" exception applies only "to prevent a state court from so interfering with a federal court's consideration or disposition of a case as to seriously impair the federal court's flexibility and authority to decide that case." *Id.* at 295, 90 S.Ct. 1739. As the Third Circuit has explained, this exception is "narrow and applies only in aid of a court's exclusive jurisdiction over a particular case, not over a general class of cases. Accordingly, the typical application of this exception has been in removal cases (where a district court must ensure its exclusive governance of the particular litigation removed) and in rem cases (where, under the traditional view, only one court can entertain jurisdiction over a particular physical res)". *1975 Salaried Retirement Plan for Eligible Employees of Crucible, Inc. v. Nobers,* 968 F.2d 401, 407 (3d Cir. 1992). In addition to these two specific exceptions, the Third Circuit has also carved out an exception for complex class actions and M.L. litigation where a federal court had expended considerable time and resources, and a pending state action threatened to derail a tentative settlement. *See Carlough v. Amchem Products, Inc.,*

---

**8.** The court notes, however, that proceeding with the sheriff's sale would be troublesome. While the plaintiff currently owes nearly $3,000, the court has found that part of this amount, the attorney's fees, is unreasonable. Therefore, it is questionable whether the sheriff's sale could lawfully proceed.

10 F.3d 189, 204 (3d Cir.1993). Because the case at bar does not involve the removal statute, the federal case is not an in rem proceeding, nor is the case at bar a complex class action near settlement (at least at this point), none of the specific exceptions envisioned by the Third Circuit apply.

19. Although this case does not fall within the typical application of the "necessary in aid of its jurisdiction" exception to the anti-injunction act, the Third Circuit has opined that courts should evaluate several factors when deciding whether a state court proceeding sufficiently interferes with a federal court's jurisdiction to justify an injunction. As the Third Circuit wrote,

> [f]irst, we look to the nature of the federal action to determine what kinds of state court interference would sufficiently impair the federal proceeding. Second, we assess the state court's actions, in order to determine whether they present a sufficient threat to the federal action. And finally, we consider principles of federalism and comity, for a primary aim of the Anti–Injunction Act is "to prevent needless friction between the state and federal courts."

*In re Diet Drugs,* 282 F.3d 220, 234 (3d Cir.2002) (quoting *Okla. Packing Co. v. Okla. Gas & Elec. Co.,* 309 U.S. 4, 9, 60 S.Ct. 215, 84 L.Ed. 537 (1940)).

20. This federal action regards the plaintiff's rights under the FDCPA. As noted in the act itself, there exists "abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors." 15 U.S.C. § 1692(a). In order to correct this abuse, Congress enacted the FDCPA "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). The plaintiff in this action specifically charges that the defendants violated the FDCPA by charging excessive fees and using deceptive practices to collect a debt.

21. As noted above, plaintiff initially owed the City of Bethlehem $252.71 in February 2002. Although the plaintiff has paid $553.60 towards the debt, she must now pay $2,806.92 in order to prevent the sheriff's sale of her home. In addition to court costs, this amount reflects the imposition of significant attorney's fees which the plaintiff has a reasonable probability of showing violate the FDCPA. If the sheriff's sale were to proceed, the state court proceeding would "present a sufficient threat to the federal action" in that Mrs. Piper would lose her home even though the fees and costs assessed against her property were unlawful. Furthermore, this court finds that enjoining the sheriff's sale of the plaintiff's home does not create needless friction between the federal and state courts. Therefore, this court finds that an injunction may issue in order to aid the jurisdiction of this court.[9]

---

**9.** The defendants point to three cases to support their contention that an injunction in the present case would violate the Anti–Injunction Act. *See Fielder v. Credit Acceptance Corp.,* 188 F.3d 1031 (8th Cir.1999) (finding that an order barring collective deficiency judgments violated the Anti–Injunction Act); *Gloucester Marine Railways Corp. v. Charles Parisi, Inc.,* 848 F.2d 12 (1st Cir.1988) (holding that an injunction preventing a ship owner from enforcing a state court tort judgment against a repair person violated the Anti–Injunction Act); *Phillips v. Chas. Schreiner Bank,* 894 F.2d 127 (5th Cir.1990) (holding that an order forbidding defendant from foreclosing upon real property violated the Anti–Injunction Act); *Millonzi v. Bank of Hillside,* 605 F.Supp. 140 (N.D.Ill.1985) (refusing to enjoin a bank from continuing foreclosure proceedings). Except for *Fielder,* none of

### III. Conclusion

For the foregoing reasons, the plaintiff's motion for a preliminary injunction is granted in part as to the individual plaintiff.

An appropriate order follows.

these cases involve a federal statute. Furthermore, the case presently before the court raises unique questions regarding a specific federal law which the state proceeding would significantly impair if not nullify.