Bridget A. **PIPER**, Plaintiff,

v.

**PORTNOFF LAW ASSOCIATES**,
et al., Defendants.

No. CIV.A. 03–2046.

United States District Court,
E.D. Pennsylvania.

June 10, 2003.

David A. Searles, Donovan Searles, LLC, Philadelphia, PA, for Plaintiff.

James W. Christie, Christie, Pabarue, Mortensen & Young PC, William F. McDevitt, Christie, Pabarue, Mortensen & Young, Philadelphia, PA, for Defendants.

## MEMORANDUM

KATZ, Senior District Judge.

Plaintiff brings the above-titled action pursuant to the federal Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692 *et seq.*, the Pennsylvania Fair Credit Extension Uniformity Act (FCEUA), 73 P.S. § 2270.1 *et seq.*, and the Pennsylvania Unfair Trade Practices and Consumer Protection Law (PUTPCPL), 73 P.S. § 201–1, *et seq.*[1] Upon consideration of the parties' submissions, the court granted in part plaintiff's motion to certify a class on June 9, 2003. The court now writes briefly to supplement that ruling.

### I. Background

Plaintiff Bridget Piper is the co-owner of real property located at 828 Kossuth Street in the Borough of Freemansburg, Pennsylvania which is adjacent to the City of Bethlehem. On February 21, 2002 Portnoff Law Associates ("PLA")[2] sent a notice of delinquency by certified mail to the plaintiff and her husband. This notice advised the Pipers that they owed the city $252.75 for delinquent water fees. Although on City of Beth-

lehem letterhead, the notice directed the Pipers to contact PLA with any questions within 30 days to avoid the imposition of legal fees. On April 4, 2002, PLA mailed a demand letter to Mr. and Mrs. Piper advising them that they now owed the City of Bethlehem $404.37 which included the delinquent water bill, interest, penalties and attorney's fees in the amount of $150.[3] The letter warned that if payment was not received within ten (10) days a lien would be filed against the real property.[4] After receiving the letter, plaintiff contacted PLA requesting verification of the dates of the delinquency. PLA advised the plaintiff that the delinquency occurred in the second and third quarters of 2001. Plaintiff stated that the debt would be paid by April 15, 2001, or she would call to make alternative arrangements. PLA did not receive any payment from Mrs. Piper.

On May 1, 2002, PLA filed a lien against the 828 Kossuth Street property. On May 9, 2002, PLA sent another demand letter advising the plaintiff of the lien and the $150 in additional attorney's fees as well as the $20.50 court filing fee. The letter informed the plaintiff that she had 15 days to resolve the outstanding claim. On May 28, 2002, PLA filed a writ of scire facias against the plaintiff's property, assessed another $150.00 in attorney's fees along with $10 in court costs and $87 for a sheriff's fee. The sheriff served the writ on June 3, 2002.

---

1. The Pennsylvania Fair Credit Extension Uniformity Act defines "unfair methods of competition and unfair or deceptive practices with regard to the collection of debts." 73 P.S. § 2270.4. Engaging in one of these defined practices constitutes a violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law.

2. Since April 2000, the City of Bethlehem employs Portnoff Law Associates ("PLA") as its exclusive attorney for the enforcement of delinquent municipal claims arising from water, sewer, trash, and tax assessments.

3. On December 22, 1999, the City of Bethlehem enacted Ordinance No. 3988, which provided the following schedule for attorney fees for various lien enforcement services: Internal review and sending first demand letter—$150.00; File lien and mailing second demand letter—$150.00; 3) Prepare Writ of Scire Facias—$150.00 Re-issue Writ—$25; Prepare and mail letter under Pa. R.

Civ. P. 237.1; Prepare motion for alternate service—$175.00; Prepare motion for summary judgment and related judgment—$150; Prepare write of execution—$750; and Attendance at Sale; Review schedule of distribution and resolve distribution issues—$400.00.

4. The Municipal Claims and Tax Liens Act, 53 P.S. § 7106 provides:

(a) All municipal claims which may hereafter be lawfully imposed or assessed on any property in this Commonwealth ... shall be and they are hereby declared to be a lien on said property, together with all charges, expenses, and fees incurred in the collection of any delinquent account, including reasonable attorney fees under subsection (a.1), added thereto for failure to pay promptly; ...

(a.1) *It is not the intent of this subsection to require owners to pay, or municipalities to sanction, inappropriate or unreasonable attorney fees, charges or expenses for routine functions.*

On June 21, 2002, the plaintiff contacted PLA to request a payment plan. The parties agreed to a three month payment plan with the first payment of $276.60 due on July 5, 2002. The plaintiff submitted the first installment of $276.60 and PLA applied $117.50 to court costs and $159.10 to attorney's fees. After August 5, 2002, however, PLA received no additional payments from the plaintiff. On September 16, PLA mailed another notice informing the plaintiff that she had ten days to act or be in default. PLA assessed $25 in attorney's fees for the preparation of this letter. On October 3, 2002, PLA mailed another notice to Mr. and Mrs. Piper and again informed the home owners that they had ten days to act or be in default. On November 8, 2002, PLA mailed another letter to Mr. and Mrs. Piper advising them that the next step was the filing of a writ of execution. The letter informed the Pipers that they had thirty days to pay the balance due.

On January 13, 2003, PLA ordered a title search of the 828 Kossuth Street property which resulted in a cost of $75 that was assessed against the real property. On February 7, 2003, PLA filed a writ of execution against 828 Kossuth Street. Due to this filing, $750 in attorney's fees, $10 in court costs, and $1500 sheriff's charges were assessed against the property. Although the plaintiff has paid $553.60 towards the $252.75

delinquent water bill, presently the plaintiff owes $2,806.92.

In her complaint, the plaintiff alleges that the defendants have not complied with their obligations under the Fair Debt Collection Practices Act, and the Pennsylvania Fair Credit Extension Uniformity Act provisions of the Pennsylvania Unfair Trade Practices and Consumer Protection Law. Specifically, the plaintiff claims that PLA's form letters to collect delinquent water and sewer bills fail inform the recipient that they were from a debt collector as required by 15 U.S.C. § 1692e(11),[5] nor did the letters include validation notices pursuant to 15 U.S.C. § 1692(g).[6] Furthermore, the plaintiff alleges that the defendants violated the FDCPA by charging "an amount (including any interest, fee, charge, or expense incidental to the principal obligation)," that was not expressly authorized by the debt agreement or permitted by law. See 15 U.S.C. § 1692f(1). Plaintiff seeks certification of the following class:

> All persons who, as owners of real property located in the City of Bethlehem, Pennsylvania, received communications from defendants after January 3, 2002 relating to municipal claims for water and sewer assessments asserted by the City of Bethlehem, as well as fees and costs. Excluded from the class are all officers and directors of the defendants.

**5.** 15 U.S.C. § 1692e(11) provides
that it is a violation of the act when a party fails to disclose in the initial written communication with the consumer and, in addition, if the initial communication with the consumer is oral, in that initial oral communication, that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose, and the failure to disclose in subsequent communications that the communication is from a debt collector, except that this paragraph shall not apply to a formal pleading made in connection with a legal action.

**6.** 15 U.S.C. § 1692g provides that
Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—
(1) the amount of the debt;

(2) the name of the creditor to whom the debt is owed;
(3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;
(4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and
(5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

Pl.'s Mot. for Class Cert. at 3. The defendants do not oppose certification per se but seek to define the class as follows:

> All real persons who, as owners of real property located in the City of Bethlehem, Northampton County, Pennsylvania, received communications from Portnoff Law Associates, Ltd. between January 3, 2002 and March 31, 2003, relating to municipal claims for water and sewer assessments asserted by the City of Bethlehem against their real property in which they personally reside, as well as fees and costs imposed pursuant to Pennsylvania's Municipal Claim and Tax Liens Act, 53 P.S. § 7101, *et seq.* and local ordinances and who assert claims against Portnoff Law Associates, Ltd. pursuant to the federal Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA") as set forth in Count I of the Complaint in this action.

Defs.'s Mot. for Cert. at 3.

*II. Discussion*

 To obtain class certification, a plaintiff must establish all four elements of Federal Rule of Civil Procedure 23(a) as well as one provision of 23(b). *Johnston v. HBO Film Management, Inc.,* 265 F.3d 178, 183 (3d Cir.2001). Under Rule 23(a), the prerequisites to a class action are:

> (1) the class is so numerous that joinder of all members is impracticable,
>
> (2) there are questions of law or fact common to the class,
>
> (3) the claims or defenses of the representative parties are typical of the claims or defense of the class, and
>
> (4) the representative parties will fairly and adequately protect the interests of the class.

In this case, plaintiff maintains that certification is appropriate under Rule 23(b)(1), (2) and (3). Under Rule 23(b), a class action is maintainable if it meets the requirements of Rule 23(a) and if

> (1) the prosecution of separate actions by or against individual members of the class would create a risk of
>
> (A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or
>
> (B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or
>
> (2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or
>
> (3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

Fed.R.Civ.P. 23. When evaluating a motion for class certification, courts should resolve doubts in favor of approving certification. *See Eisenberg v. Gagnon,* 766 F.2d 770, 785 (3d Cir.1985). At the certification stage, courts should refrain from conducting a preliminary inquiry into the merits of the action. *See Barnes v. Am. Tobacco Co.,* 161 F.3d 127, 140 (3d Cir.1998) (citing *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 177–78, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974)). However, a court may need to examine the factual and legal allegations in the complaint before determining certification. *See Barnes,* 161 F.3d at 140.

## A. Numerosity

"Numerosity requires a finding that the putative class is so numerous that joinder of all members is impracticable." *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 182 (3d Cir.2001). Defendants do not challenge the numerosity of a class consisting of owners of real property located in the City of Bethlehem who received communications from Portnoff relating to municipal sewer and water claims asserted against real property by the City of Bethlehem between January 3, 2002 and March 31, 2003.[7] *See* Defs.' Mem. in Opposition to Pl.'s Mot. for Class Cert. at 9. However, defendants argue that the class may only be certified pursuant to the federal FDCPA and not the state statutes. According to the defendants, the plaintiff is unable to show actual damages for the proposed class as required by the PUTPCPL. Under the PUTPCPL,

[a]ny person who purchases or leases goods or services primarily for personal, family or household purposes and thereby suffers *any ascertainable loss of money or property, real or personal, as a result of* the use or employment by any person of a method, act or practice declared unlawful by section 3 of this act, may bring a private action to recover actual damages or one hundred dollars ($100), whichever is greater.

73 P.S. § 201–9.2(a) (emphasis added). Plaintiff responds that where there are common questions of liability, class certification is not precluded by the need for individual proof by class members as to the extent of damages. Pl.'s Mem. in Reply to Defs.' Opposition to Class Cert. at 7. According to the plaintiff, the defendants sent between 500 and 1,000 similar demand and collection letters to other residential homeowners. While plaintiff concedes that it is unknown how much money potential class members paid to defendants, plaintiff argues that discovery will provide this information.

In *Weinberg v. Sun Company, Inc.*, 565 Pa. 612, 777 A.2d 442 (2001), the Pennsylvania Supreme Court addressed the PUTPCPL's requirement that a plaintiff show actual damages as a result of a defendant's unlawful actions. In *Weinberg*, gasoline consumers sued an oil company alleging that it had engaged in deceptive advertising to induce consumers to purchase high octane gasoline. According to the named plaintiffs, the defendant's false advertising increased its sales, the increased sales drove up the price of the high octane gasoline, and that the class suffered an injury by paying more for the gasoline. *Id.* at 445. However, the Supreme Court disagreed and found that there was no causal connection between the advertising and the alleged ascertainable loss. The court wrote,

the statute ... requires [the plaintiff] to allege that he purchased the gasoline for personal or household purposes, that he drove a vehicle whose engine would not benefit from the high octane [fuel], as well as *the amount he purchased in order to establish the amount of his ascertainable loss.*

*Id.* at 446 (emphasis added). Because "[t]he questions of fact applicable to each individual private plaintiff would thus be numerous and extensive," *id.*, the Supreme Court affirmed the trial court's conclusion that the proposed class failed the numerosity and commonality requirements for class certification.

To support her argument that a class may be certified under the PUTPCPL even though there are questions regarding individual proof of actual damages, plaintiff points to *Baldassari v. Suburban Cable TV. Co., Inc.*, 808 A.2d 184 (Pa.Super.2002). In *Baldassari*, the plaintiff brought a class action alleging that his cable television provider's late fee policy violated the PUTPCPL. According to the plaintiff, the defendant had approximately 600,000 Pennsylvania subscribers and the number of late fee transactions each year exceeded 720,000. *Id.* at 190. In reversing the trial court's determination that the plaintiff failed to meet the numerosity requirement, the *Baldassari* court wrote

we are satisfied that [plaintiff] has established a proposed class with a magnitude sufficiently numerous that joinder of all its members would impracticable.... [T]he administrative difficulties associated with

---

7. The plaintiff filed this action on March 31, 2003.

identifying subscribers who actually paid late fee assessments does not defeat numerosity but more appropriately addressed future management of the class. Since identification of potential class members can be made, the trial court abused its discretion in finding that [plaintiff] had failed to establish the numerosity requirement for class certification.

*Id.* at 191 (footnote omitted). Because the record in *Baldassari* showed over 720,000 late fee assessments, the court held that it was not necessary for the plaintiff to identify the subscribers who actually paid the assessments in order to satisfy the numerosity requirement. According to the court, "it is well established that questions as to the amount of individual damages will not preclude a class action." *Id.* at 194–95.

■ In this case, plaintiff alleges that defendants sent between at least 500 letters on behalf of the City of Bethlehem seeking repayment of delinquent water and sewer debts. As the Pennsylvania Supreme Court declared in *Weinberg*, "the [PUTPCPL] statute clearly requires, in a private action, that a plaintiff suffer an ascertainable loss as a result of the defendant's prohibited action." 777 A.2d at 446 (emphasis omitted). Although the *Baldassari* court held that a plaintiff may establish numerosity without identifying potential class members who actually paid late fees, the plaintiff in this action is unable to show that *any* members of the proposed class, aside from the named plaintiff, suffered an ascertainable loss as required under the PUTPCPL.[8] While

questions as to the exact amount of individual damages may not foreclose a class action, this court finds it impossible to ascertain how many of the defendants' letters included assessments for attorney's fees, and whether those potential class members are so numerous as to make joinder impracticable. Because the proposed class fails the numerosity requirement of Rule 23(a) with respect to state law, this court will not certify a class pursuant to the state claims.[9]

■ Defendants further seek to limit the class by excluding businesses, corporations, and real persons who obtain rental income from their properties. The FDCPA defines debts as

> any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment.

15 U.S.C. § 1692a(5). According to the Third Circuit, water and sewer obligations owed by individuals who own their property for business purposes do not qualify as debts under the FDCPA because "the services are not 'primarily for personal, family, or household purposes.'" *Pollice v. National Tax Funding, L.P.*, held that 225 F.3d 379, 400 n. 23 (3d Cir.2000) (quoting 15 U.S.C. § 1692a(5)). This court finds that it is appropriate to exclude businesses, corporations

---

8. Although there is evidence that defendants mailed numerous collection letters, PLA did not charge attorney's fees for every notice. *See Piper v. Portnoff Law Associates,* 262 F.Supp.2d 520, 2003 WL 21146707 (E.D.Pa.2003) (noting that the first notice mailed to the plaintiff on behalf of the City of Bethlehem did not assess attorney's fees).

9. The defendants also argue that the Pennsylvania Fair Credit Extension Act (FCEUA) expressly provides that debt collectors who violate both the state statute and the FDCPA shall not incur cumulative penalties. 73 P.S. § 2205(c). Defendants reason that the Pennsylvania legislature intended to preclude claimants from receiving a windfall by twice prosecuting their putative claims under the FDCPA and the FCEUA.

Therefore, plaintiffs must choose whether to bring the federal or state law claim. Because the individual plaintiff chose to file this action as a federal question before the District Court, defendants contend that the plaintiff made her choice and must proceed under the FDCPA. Plaintiff responds that the statute prohibits cumulative remedies "but does not mean that a plaintiff cannot proceed under both laws and, if she prevails at the end of the case, then simply elect the remedy which provides the best relief for the Class." Pl.'s Reply to Defs.' Opp. to Class Cert. at 3. Because the proposed class under state law fails the numerosity requirement of Rule 23(a), this court need not decide this issue. However, the court notes that the parties to this action are not diverse and the court would lack jurisdiction over a class certified under only state law.

and real persons who own their property for business purposes from the class.[10]

### B. Commonality and Typicality

■ Although commonality and typicality are distinct inquiries, they are closely related as both "criteria seek to assure that the action can be practically and efficiently maintained and that the interests of the absentees will be fairly and adequately represented." *Baby Neal v. Casey,* 43 F.3d 48, 56 (3d Cir.1994). It is not essential that "all putative class members share identical claims" and "factual differences among the claims of the putative class members do not defeat certification." *Id.* at 56 (citing *Hassine v. Jeffes,* 846 F.2d at 169). To fulfill the commonality requirement, it is necessary to show only that "the named plaintiffs share at least one question of fact or law with the grievances of the prospective class." *Baby Neal,* 43 F.3d at 56. Even though individual facts and circumstances may become important in the case, class treatment is not precluded. *Id.* at 57. The typicality requirement asks "whether the action can be efficiently maintained as a class and whether the named plaintiffs have incentives that align with those of absent class members so as to assure that the absentees' interests will be fairly represented." *Id.* at 57. Where the named plaintiff as well as members of the proposed class all have similar claims arising from the same fraudulent scheme, the typicality requirement is satisfied regardless of whether different facts underlie each class member's claim. *See In re Prudential Insurance Company America Sales Practices Litigation,* 148 F.3d 283, 311–12 (3d Cir. 1998).

■ Defendants do not challenge the commonality or typicality of a class of individuals who received notices from PLA relating to municipal claims for water and sewer assessments asserted by the City of Bethlehem as well as fees and costs imposed by the defendants.[11] In this case, defendants mailed between 500 and 1,000 form letters in order to collect delinquent water and sewer bills on behalf of the City of Bethlehem. These form letters are similar to the letters defendants mailed to the named plaintiff. The class representative's claims are common and typical to the proposed class. Therefore, these requirements for certification are satisfied.

### C. Adequacy of Representation

"Adequate representation depends on two factors: (a) the plaintiff's attorney must be qualified, experienced, and generally able to conduct the proposed litigation, and (b) the plaintiff must not have interests antagonistic to those of the class." *Wetzel v. Liberty Mutual Insurance Co.,* 508 F.2d 239, 247 (3d Cir.1975). In this action, defendants do not challenge the qualifications or ability of counsel to adequately represent the proposed class. Furthermore, defendants offer no evidence that the named plaintiff's interests are antagonistic to the class. *See Lewis v. Curtis,* 671 F.2d 779, 788 (3d Cir.1982) ("The burden is on the defendant to demonstrate that the representation will be inadequate."), *abrogated on other grounds, Garber v. Lego,* 11 F.3d 1197 (3d Cir.1993). Therefore, this court finds that plaintiff will adequately represent the interests of the proposed class.

### D. Rule 23(b)

■ Once a proposed class has fulfilled the numerosity, commonality, typicality, and adequacy of representation requirements of Rule 23(a), the class must also meet one of Rule 23(b)'s three provisions. In this case, plaintiff argues that certification is appropriate under all sections of 23(b). According to the plain-

---

**10.** Although defendants seek to exclude all individuals who receive rental income from their properties, the court finds this too restrictive. While the FDCPA does not apply to rental properties, excluding all owners of real property who obtain *any* rental income from their properties would also exclude individuals who rent rooms in their homes but reside in them as well.

**11.** The defendants do seek to limit the class to those individuals who resided within the City of

Bethlehem limits. However, the named-plaintiff resides in the Borough of Freemansburg which is outside the city limits of Bethlehem but received water service from Bethlehem. This court finds that a more appropriate class definition would include those individuals who received letters from the defendants relating to municipal claims asserted by the City of Bethlehem regardless of where they lived at the time.

tiff, the proposed class qualifies for certification under Rule 23(b)(1) as this court noted in a similar class action against the same defendants. *See Parks v. Portnoff Law Associates*, 210 F.R.D. 146, 152 (E.D.Pa.2002). In *Parks*, the defendants mailed similar form demand letters on behalf of a municipality in order to collect delinquent water and sewer bills. The plaintiffs in *Parks* alleged, as does the plaintiff in the case at bar, that these letters violated certain provisions of the FDCPA. As the court concluded in *Parks*, the prosecution of separate actions creates the risk of inconsistent results and could "establish incompatible standards of conduct for the party opposing the class." Fed. R.Civ.P. 23(b)(1)(A). Furthermore, individual adjudications would be dispositive of the interests of others not parties to those proceedings or "substantially impair or impede" the ability of class members to protect their interests. Fed.R.Civ.P. 23(b)(1)(B). Therefore, the proposed class meets the requirements of Rule 23(b)(1).

Plaintiff also contends that the proposed class meets the conditions for certification pursuant to Rule 23(b)(2). As noted, Rule 23(b)(2) provides that certification is appropriate when "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Fed.R.Civ.P. 23(b)(2). Plaintiff seeks a declaration that the defendants' conduct violates the FDCPA and an injunction against further communications between the defendant and the putative class members. Complaint ¶ VII(b), (c). Therefore, class action treatment is warranted under Rule 23(b)(2).

In addition, the proposed class is maintainable under Rule 23(b)(3) because "questions of law or fact common to the members of the class predominate over any questions affecting only individual members" and a class action is the "superior" method to adjudicate this dispute. Fed.R.Civ.P. 23(b)(3). In this case, plaintiff has alleged that the defendants mailed letters in violation of the FDCPA and conducted a uniform practice and policy against the named plaintiff and proposed class. *See* Pl.'s Mot. for Class Cert. at 20. As the Third Circuit has noted, "[P]redominance is a test readily met in certain cases alleging consumer or securities fraud or violations of the antitrust laws ...." *Amchem Prods. v. Windsor*, 521 U.S. 591, 625, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997). Although individual questions may arise in the course of litigation, the mere possibility of individual issues does not automatically preclude a finding of predominance. *See In re Prudential Ins. Co. Am. Sales Practices Litig.*, 148 F.3d 283, 314 (3d Cir. 1998). Because each member of the proposed class received substantially similar letters from the defendants and the factual and legal issues are identical under the FDCPA, certification is maintainable under Rule 23(b)(3).

### III. Conclusion

For the foregoing reasons, the plaintiff's motion is granted and the class is certified as to the federal claim. Because the individual issues with respect to actual damages predominate, this court will not certify the class pursuant to the FCEUA and the PUTPCPL.